**IN THE U.S. DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **Michael A. Scott** | * | |
| ***On behalf of himself and*** | * | |
| ***others similarly situated*** | | |
| | * | |
| **Plaintiff** | | |
| | * | |
| **v.** | | **Case No. 1:21-CV-00034-SAG** |
| | * | |
| **Baltimore County** | * | |
| **Defendant** | * | |
| _____ / | | |

**PLAINTIFF'S UNOPPOSED MOTION TO CONDITIONALLY CERTIFY**
**A COLLECTIVE ACTION AND FOR APPROVAL**
**OF AND FACILITATION OF NOTICE TO POTENTIAL CLASS MEMBERS**

Plaintiff, Michael A. Scott ("Scott" or "Plaintiff"), by and through undersigned counsel, moves to conditionally certify a collective action pursuant to the Federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and for approval and facilitation of notice to potential class members, and for good cause states:

**I.    Introduction**

This case was filed as a collective action under the FLSA, by Michael A. Scott who alleges that he performed work for Defendant Baltimore County's Department of Public Works, Bureau of Solid Waste ("DPW") in Cockeysville, Maryland while incarcerated in a Baltimore County facility.  (ECF Doc. 1, ¶ 1).  Plaintiff Scott alleges that he and other similarly situated workers,

who were incarcerated in Baltimore County but permitted to perform work detail[1] at a DPW recycling program in Cockeysville, Maryland were covered by the FLSA.  Plaintiff Scott further alleges that Defendant failed to pay him, and similarly situated workers,[2] the statutory minimum wage and overtime compensation required by the FLSA, 29 U.S.C. §§ 206 and 207; that work detail workers, including the Plaintiff, were paid $20.00 per day by the DPW even though they were regularly scheduled to work from 6:00 AM to 4:00 PM, including a thirty (30) minute lunch break, five days a week, Monday through Friday; and that they performed the same work as other workers, who were not detainees, and who otherwise were entitled to the protections of the FLSA.

As a result, Plaintiff seeks unpaid statutory minimum wages and liquidated damages on behalf of himself and similarly situated DPW performing work for Baltimore County through a work detail program, and requests that the Court (i) issue an Order conditionally certifying this case as a collective action under the FLSA and (ii) notify all persons performing work detail for DPW's Cockeysville, Maryland recycling program (Material Acceptance Facility), and who performed this work through a Baltimore County work detail program for less than $7.25/hour (and/or less than $10.87/hour for overtime hours worked in excess of 40/hours per week) that they are eligible to join this lawsuit.   (ECF Doc. 1).

Defendant Baltimore County have agreed not to oppose this Motion To Conditionally Certify A Collective Action And For Approval Of And Facilitation of Notice To Potential Class Members, but does so without prejudice to any defenses and without prejudice to any motion for

---

[1]    Defendants have alleged that the precise terminology to describe Plaintiff and other similarly situated workers' assignments is "work detail."  Plaintiff has not had the benefit of discovery yet to determine whether there is a difference in the meaning between "work release" and "work detail."  For the purposes of this motion, Plaintiff accepts the term "work detail" without prejudice, and until he can make a more informed finding on this issue.

[2]    Plaintiffs contend that these workers are statutory employees, whereas Defendants disagree and contend that these workers are not employees covered by the FLSA.  For the limited purposes of this Motion, Plaintiff will refer to putative class members as workers.

decertification to be filed at or near the conclusion of discovery.  Further, Defendant reserves the right to dispute all factual and legal assertions and to seek decertification at a future date.

## II.   Facts Supporting Certification

### A.   Work Detail Workers

Plaintiff was incarcerated in the Baltimore County Detention Center (the "Detention Center") from on or about December 5, 2019 to March 12, 2020.  (Exhibit 1, Scott Declaration, ¶¶ 2-3).  At all material times, the DOC supplied work detail labor to staff in part the recycling program operated by the DPW at its Materials Recovery Facility ("MRF") in Cockeysville, Maryland.[3]  (Id.)

Plaintiff performed work, through the Detention Center's work detail program, at the MRF recycling facility operated by the DPW throughout the time Plaintiff was incarcerated at the Detention Center from on or about December 5, 2019 to March 12, 2020.  (Exh.1, Scott Decl., ¶ 3).  Plaintiff voluntarily chose to work at the MRF in part because he had prior experience working in salvage and recycling operations.  (Id., ¶ 4).

For the entire time that Plaintiff worked in the recycling program, DOC supplied work detail labor to staff DPW's recycling work facility in Cockeysville, Maryland.  On information and belief, DPW supervised and controlled the work detail workers' work schedules and working conditions.  DPW supervisory personnel also had the power to dismiss work detail workers.  (Exh. 1, Scott Decl., ¶ 6).

Together with the other work detail employees, the DOC would transport Plaintiff to and from the DPW's recycling facility on each workday.  Plaintiff was scheduled to work from 6:00

---

[3]     In communications with Defendant's counsel, the Defendants refer to the "Materials Recovery Facility" as the "Central Acceptance Facility," but this distinction does not appear to be material.  The parties are in agreement that DPW's recycling (sorting) facility in Cockeysville, Maryland is the facility at issue in this case.

AM to 4:00 PM, including a thirty (30) minute lunch break, five days a week, Monday through Friday. Based on the normal weekly schedule, the work detail workers, including the Plaintiff, generally worked at least 57.5 hours each week, excluding lunch breaks. (Exh.1, Scott Decl., ¶¶ 10-11).

Plaintiff was paid $20.00 per day by the DPW. DPW never paid overtime compensation to Plaintiff for statutory workweeks in which Plaintiff worked more than forty (40) hours per week. Other work detail workers worked at similar rates of pay to Plaintiff (*i.e.*, $20.00 per day). Plaintiff, and other DOC workers who worked with him, were never paid any overtime compensation for statutory workweeks in which they worked more than forty (40) hours per week. (Exh. 1, Scott Decl., ¶ 10).

Plaintiff and other similarly situated workers were paid $20.00 per day by the DPW and it is alleged that this work was both productive and had a consequential economic benefit to Defendant. DPW generally had about twenty (20) work detail workers working in the recycling program at the MRF at any one time. (Exh. 1, Scott Decl., ¶ 6). Due to the significant turnover in the persons incarcerated at the Detention Center, Plaintiff believes that well over one-hundred different work detail workers have worked the MRF since December 2019. (Exh. 1, Scott Decl., ¶¶ 5, 7).

For the entire time that Plaintiff worked in the recycling program, DPW also used temporary workers from a private sector temporary placement agency to perform the exact same work. Unlike Plaintiff and other workers placed through the work detail program, the temporary placement workers from private sector agencies who worked in DPW's recycling program were all paid, on information and belief, the required minimum wages and overtime compensation. (Exh. 1, Scott Decl., ¶ 8).

III.    **Argument**

**A.  The Common FLSA Wage Violations**

As set forth above, the Defendants are alleged to have violated the FLSA in two separate and distinct ways, all of which applied to a similarly situated group of workers who performed work detail at the Cockeysville DPW facility and who were placed through the DOC work detail program.  Plaintiff alleges that Defendant paid Plaintiff, and other DPW workers similarly situated to Plaintiff (placed at DPW by the DOC), less than the statutory minimum wage for each hour of work.  Furthermore, Plaintiff alleges that Defendant failed to pay any overtime compensation to Plaintiff, and other workers performing work for DPW similarly situated to Plaintiff (placed at DPW by the DOC), even though they regularly worked more than forty (40) hours per week.

This Court has stressed that "[w]hether to certify a collective action is a decision within the discretion of the district court and should be made with consideration given to the remedial purposes of the FLSA." Feehley v. Sabatino's, Inc., 2018 WL 2972475, *2 (D. Md. Jun. 13, 2018) (citing Quinteros, 532 F. Supp. 2d at 771); see also Mancia et al. v. Mayflower Textile Services Co., 2008 WL 4735344, *3 (D. Md. Oct. 14, 2008) (Blake, J.).

"The relevant questions for FLSA collective action certification, then, are whether the plaintiffs are 'similarly situated' and, if so, whether the court facilitated notice is needed to enable additional prospective plaintiffs to opt into the lawsuit." Mancia, 2008 WL 473533, at *3; see also Williams et al. v. Long (d/b/a Charm City Cupcakes), 585 F.Supp.2d 679, 684 (D. Md. 2008) ("The paramount issue in determining the appropriateness of a conditional certification is whether plaintiffs have demonstrated that potential class members are 'similarly situated.' ") (Grimm, J.).

    **i.       The Meaning of "Similarly Situated"**

Although the U.S. Court of Appeals for the Fourth Circuit has yet to define the term

"similarly situated" in the context of an FLSA collective action, "[t]his Court has held that a group of FLSA plaintiffs is similarly situated if they can show that they were victims of a common policy, scheme, or plan that violated the law." Ware v. Aus, Inc., 2017 WL 1354143, *2 (D. Md. Apr. 13, 2017) (citing Mancia, 2008 WL 473533, at *3 (citing cases)); Marroquin, 236 F.R.D. at 259-60 (citing Realite v. Ark Restaurants Corp., 7 F.Supp.2d 303, 307-08 (S.D.N.Y. 1998) (Sotomayor, J.)). In Realite, then-District Court Judge Sotomayor stressed that "[t]he burden on plaintiffs is not a stringent one, and the Court need only reach a preliminary determination that potential plaintiffs are 'similarly situated.' " Realite, 7 F.Supp.2d at 306.

Accordingly, Plaintiffs here must make a "preliminary factual showing indicating a similarly situated group of potential plaintiffs exists." Williams, 585 F.Supp.2d at 684. " 'This would include factual evidence by affidavits or *other means*, but mere allegations in the complaint would not suffice.' " Id. (italics in original) (citations omitted). "This showing must consist of more than 'vague allegations' with 'meager factual support,' " "but it need not enable the court to reach a conclusive determination whether a class of similarly situated plaintiffs exists." Mancia, 2008 WL 473533, at *2. "Plaintiffs generally need only make a 'relatively modest factual showing' that [] a common policy, scheme, or plan exists [that violates the FLSA]." Flores v. Unity Disposal & Recycling, LLC, 2015 WL 1523018, *2 (D. Md. Apr. 2, 2015); Rawls v. Augustine Home Health Care, Inc., 244 F.R.D. 298, 300 (D. Md. 2007) (noting the "minimal evidentiary showing" that a plaintiff must make in order to obtain conditional certification of a collective action); see also Shaver v. Gills Eldersburg, Inc., ELH 14-3977, 2015 WL 5897463, *6 (D. Md. Oct. 6, 2015) ("plaintiff need only make a 'relatively modest factual showing'… .").

### B.    There Exists a Two-Tiered Approach That Courts Use To Administer Properly Filed § 216(b) Cases.

There is a two-tiered or two step approach that Courts take in certification of a § 216(b)

opt-in class. See, e.g., Ware, supra at *2 ("Furthermore, this Court has employed a two-step inquiry when deciding whether to certify a collective action under the FLSA.") (citing cases); see also Dominguez et al. v. Don Pedro Restaurant, et al., 2007 WL 271567, *2 (N.D. Ind. Jan. 25, 2007); Bell et al. v. Mynt Entertainment, LLC, et al., 223 F.R.D. 680, 683 (S.D. Fla. 2004).

> First, upon a minimal evidentiary showing that a plaintiff can meet the substantive requirements of 29 U.S.C. § 216(b), the plaintiff may proceed with a collective action o a provisional basis. Second, following discovery, the court engages in a more stringent inquiry to determine whether the plaintiff class is "similarly situated" in accordance with the requirements of § 216.

Ware, 2017 WL 1354143 at *2 (citing Rawls, 244 F.R.D. at 300); see also Goldman et al. v. RadioShack Corp., 2003 U.S. Dist. LEXIS 7611, at *19 (E.D. Pa. April 16, 2003) ("The first tier of the test occurs at the beginning of the case when the court has minimal evidence. At this stage, the court may only conditionally certify the class so that the Plaintiff may send notice to the potential representative action members. 'A court may conditionally certify the class for purpose of notice and discovery under a comparatively liberal standard, i.e., by determining that the members of the putative class 'were together the victims of a single decision, policy or plan.' The conditional certification is by no means final.") (citations omitted).

In the first stage, i.e., the "notice stage," a merit-based review is not appropriate. See id. at *24-25; Knox v. Hooper's Crab House, Inc., 2018 WL 723964, at *2 (D. Md. Feb. 6, 2018) ("To meet their burden at this stage, the plaintiffs must make 'a relatively modest factual showing.'") (quoting Randolph v. PowerComm Const., Inc., 7 F. Supp. 3d 561, 575 (D. Md. 2014)); Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 262 (S.D.N.Y. 1997) (merits of the case are irrelevant to "similarly situated" test). "Because this step occurs early in a case, the court accepts as true the plaintiffs' allegations and does not reach the merits of the plaintiff's FLSA claims." Dominguez, 2007 WL 271567, at *2 (citing Realite, supra, at 307 ("Even if plaintiffs' claims turn

out to be meritless or, in fact, all plaintiffs turn out not to be similarly situated, notification at this stage, rather than after further discovery, may enable more efficient resolution of the underlying issues in this case.")).  "A plaintiff must only present 'a similar legal issue as to coverage, exemption, or nonpayment o[f] minimum wages or overtime arising from at least a manageably similar factual setting with respect to their job requirements and pay provisions… .' "  Shaver, 2015 WL 5897463, *9 (quoting De Luna Guerrero v. N.C. Grower's Ass'n, Inc., 338 F.Supp.2d 649, 654 (E.D.N.C. 2004)).

The second step in the certification of a collective action is usually conducted after the completion of class-related discovery.  Butler v. DirectSAT USA, LLC, 876 F.Supp.2d 560, 566 (D. Md. 2012) ("When deciding whether to certify a collective action pursuant to the FLSA, courts generally follow a two-stage process.  In the first stage, commonly referred to as the notice stage, the court makes a 'threshold determination of 'whether the plaintiffs have demonstrated that potential class members are similarly situated,' such that court-facilitated notice to putative class members would be appropriate.'  In the second stage, following the close of discovery, the court conducts a 'more stringent inquiry' to determine whether the plaintiffs are in fact 'similarly situated,' as required by § 216(b).")  (citations omitted); Mueller v. CBS, Inc., 201 F.R.D. 425, 428 (W.D. Pa. 2001).  During the second step, the court conducts a specific factual analysis of each workers' claim to ensure that each claimant is an appropriate party.  Mueller, 201 F.R.D. at 428.  Plaintiffs bear the burden of showing they are similarly situated to the remainder of the proposed class.  Mendoza v. Mo's Fisherman Exchange, Inc., No. ELH-15-1427, 2016 WL 3440007, at *11 (D. Md. Jun. 22, 2016).  "If the court then decides that the plaintiffs are not 'similarly situated,' the FLSA representative action will be decertified and the plaintiffs will proceed with individual claims." Goldman, 2003 U.S. Dist. LEXIS 7611, * 21.

**C.      Conditional Certification (Notice Stage Certification) Is Warranted In This Case.**

      **i.      The Proposed Collective Class Definition.**

Plaintiff proposes the following Collective Action class:

> Workers who, within the last three years of filing this lawsuit, have performed work for DPW at its MRF recycling facility in Cockeysville, Maryland through the work detail program of the DOC, and who have not received at least $7.25/hour (and $10.87/hour when working over 40 hours in a single workweek)).

Plaintiff has demonstrated that the proposed class of workers are similarly situated as required by the FLSA.  "A plaintiff must only present 'a similar legal issue as to coverage, exemption, or nonpayment o[f] minimum wages or overtime arising from at least a manageably similar factual setting with respect to their job requirements and pay provisions… .' "  Shaver v. Gills Eldersburg, Inc., ELH 14-3977, 2015 WL 5897463, *9 (D. Md. Oct. 6, 2015) (quoting De Luna Guerrero, 338 F.Supp.2d 649, 654 (E.D.N.C. 2004)).  Moreover, Plaintiff can demonstrate that court-facilitated notice is an appropriate manner of resolving these claims, particularly given the remedial nature of the FLSA.

      **ii.      Plaintiff Has Demonstrated The Existence Of *Potential* FLSA Violations.**

The evidence in this case demonstrates that there are well over one hundred (100) work detail workers who are "similarly situated" to Plaintiff.  The evidence further demonstrates that putative collective action class members, including the Plaintiff, were allowed to perform work by the Defendant at the DPW's recycling facility and were paid twenty ($20) dollars per day for 9.5 hours of work (a rate that is less than the required Federal minimum wage of $7.25/hour); did not receive overtime compensation when they worked more than forty (40) hours per week; and were treated in a similar manner.  (Exh. 1, Scott Decl., ¶¶ 7, 10-12).

Accordingly, the Plaintiff has demonstrated he and others similarly situated have the potential to recover unpaid wages owed under the FLSA and together, have been subject to a common policy or practice.

      iii.    **This Is An Appropriate Case For the Court to Conditionally Certify As A Collective Action Under The FLSA, And To Facilitate Court Notice To Each Putative Collective Action Class Member.**

The next issue is whether this case is appropriate for conditional certification of an FLSA collective action, and Court facilitated notice.  See Mancia, 2008 WL 4735344, at *3 ("The relevant questions for FLSA collective action certification, then, are whether the plaintiffs are 'similarly situated' and, if so, whether court facilitated notice is needed to enable additional prospective plaintiffs to opt into the lawsuit.")

This is clearly an appropriate case for conditional certification and Court facilitated notice, for the following reasons.

First, the Defendant has allowed scores of work detail inmates from the DOC, including the Plaintiff, to perform work for DPW at its MRF (recycling facility) in Cockeysville, Maryland, over the last three years.  Due to high rate of turnover among inmates at the Detention Center, Plaintiff anticipates that there are at least one hundred (100) similarly situated persons.  This Court has relied on the existence of a large number of similarly situated workers as justification for conditional certification.  See Mancia, 2008 WL 4735344, at *3 ("this facility employs between 60 and 100 workers, many of whom may be unaware of this lawsuit, and there may be as-yet-unidentified workers who previously worked at the facility with similar claims"); Marroquin, 236 F.R.D. at 260 ("The fact that there are, at least, approximately 113 unidentified co-workers who were in this same position weighs heavily in favor of allowing this case to proceed as a collective action and allowing a notice plan to move forward.").  Additionally, there are a large number of

similarly situated persons who have had no contact with the Plaintiff. Thus, conditional certification and Court facilitated notice is critically important so that eligible workers may learn of their potential rights.

Second, the unpaid wages in this case are not so large and substantial that individuals, with sufficient information, might have a personal incentive to bring their claims for unpaid minimum wages and overtime, on an individual basis. Courts have considered the amount of unpaid wages as a factor in granting conditional certification and court notice. See Higueros et al. v. New York State Catholic Health Plan, Inc., 2009 WL 3463765, *2 (E.D.N.Y. Oct. 21, 2009) ("The amount involved in many of these actions is not substantial and, therefore, there often would be no incentive to bring such an action without permitting similarly situated employees to band together in order to assert their collective rights."). Conditionally certifying this case as a collective action, particularly given the common issues of facts and law presented in this case, would both further the remedial purposes of the FLSA, and would be beneficial from a judicial efficiency perspective.

Third, as set forth above, Plaintiff submits that the putative collective action members and the Plaintiff have virtually identical claims. Given the nature of the claims, the anticipated evidence in this case, and the anticipated manner of calculating damages, Plaintiff submits that this case is particularly suitable to collective action disposition because there is likely no significant difference from one worker to the next.

Given the record presently before this Court, including the Plaintiff's Complaint and Declaration, and the lack of opposition to this Motion, Plaintiff has clearly made a sufficient factual showing with respect to the similarly situated requirement. The Court should grant conditional certification and notice as to all persons within the proposed class definition, set forth in section III.C.(i), supra.

D.    **The Court Should Approve Plaintiff's Plan for Notifying Potential Opt-In Plaintiffs.**

Having demonstrated that Plaintiff is similarly situated to other workers who performed work for DPW's MRF facility in Cockeysville, Maryland through the work detail program administered by DOC, and having further demonstrated that this case is appropriate for conditional certification and court facilitated notice, the Plaintiff requests that the Court facilitate notice to all of the potential Collective Action class members that could be impacted by this case as defined above, *i.e.*, Workers who, within the last three years of filing this lawsuit, and who have performed work for DPW at its MRF recycling facility in Cockeysville, Maryland through the work detail program of the DOC and who have not received at least $7.25/hour (and $10.87/hour over 40 hours)).

This Court has observed that Court facilitated notice "may be especially important" in cases involving workers who are traditionally low-paid and subject to exploitation. See Marroquin, 236 F.R.D. at 259 n.9.  The *potential* for exploiting penal labor certainly fits within this category of workers.  These inmate workers, many of whom still owe rent and child support despite their incarceration, have lost any regular form of income that they may have had and are limited in their ability to sell their labor by virtue of their penal status.  They are worthy of the same protections as the migrant workers in Marroquin.  Like migrant workers, performing work at a recycling plant involves work in a difficult and physically taxing environment and the very nature of the work, and the connection to the DOC, does not lead to lengthy work tenures.  So, there is a predictable high amount of turnover, and it is reasonable to infer that the proposed Collective Action class predominately involves an inherently transitory group of persons, just like the "recent college graduates" at issue in this Court's discussion of the notice issues in Andrade, et al. v. Aerotek, CCB-08-2668, 2009 WL 2757099 *1 n.1 (D. Md. Aug. 26, 2009) (Blake, J.).  Thus, this Court

must fashion a particular notice regime specifically tailored to the workers at issue. <u>Marroquin</u>, 236 F.R.D. at 262 n. 19 (in discussing what notification efforts would be used, the Court stated: "This notification effort is warranted in light of the testimony produced, the importance of adequate notification in an 'opt-in' regime such as this, the nature of this population and the defendants' apparent failure to maintain adequate records.").

Accordingly, the Plaintiff submits the following notice plan, which is tailored to the worker population at issue, the important role that the FLSA plays in economic relations, and the needs of this case.

### i.    Proposed Notices

First, the Plaintiff requests that the Court approve the attached proposed Notice, to be signed by the Court. (Exh. 2). This Notice is similar to the Notice approved by this Court in <u>Williams, et al. v. ezStorage Corp., et al.</u>, 2011 WL 1539941, *4 (D. Md. April 21, 2011) (Bennett, J.). The proposed Notice is necessary in order to completely inform potential Collective Action class members as to the nature of this suit and other key facts relating to this lawsuit

### ii.    Production of Contact Information

Second, the Plaintiff requests that the Court order the Defendants to produce, within thirty (30) days of the Court's Order, a computer readable list of all persons who fit within the proposed class definition, as set forth in section III.C.(i), *supra*.

The Plaintiff is requesting that the Court order production of information to include the first, middle (if applicable), and last name of each Collective Action class member, all mailing addresses, and if available, the dates of employment. If mail is returned as undeliverable for a particular Collective Action class member, the Plaintiff is requesting that the Defendant provide

all cell telephone numbers for that Collective Action class member within three (3) days of Plaintiff's request (and proof of returned mail).

### iii.    Notice Methods

Third, the Plaintiff requests that the Court approve the following methods of notifying potential Plaintiffs: (a) U.S. Mail; and (b) text message to all workers whose notice is sent by U.S. Mail and returned as undeliverable.

As to the first method, U.S. mailing, Plaintiff's counsel will handle the mailing of the Court notice and will collect and file all opt-in notices received from persons with claims against Defendants, and prior to filing a notice, will make a preliminary investigation of the claim in compliance with Fed.R.Civ.P. 11.

The second method involves dissemination via text message, with accompanying brief text, by Plaintiff's counsel.  Text messages represent a very common method of communication today. Courts have now routinely begun allowing text messaging of the Court's Notice.  See, e.g., Landry et al. v. Swire Oilfield Services, LLC, 252 F.Supp.3d 1079, 1129-30 (D. N.M. 2017) (Recognizing that similar to email, Courts have authorized notice by text message); Calvillo v. Bull Rogers, Inc., 267 F.Supp.3d 1307, 1315 (D.N.M. 2017) ("Courts have recognized that notice by email and text is reasonable in today's mobile society and that these methods of communication may offer a more reliable means of reaching an individual even if that individual is aware from home or has moved."); Bhumithanarn v. 22 Noodle Market Corp., 2015 WL 4240985, *5 (S.D.N.Y. July 13, 2015) ("given the high turnover characteristic of the restaurant industry, the Court finds that notice via text message is likely to be a viable and efficient means of communicating with many prospective members of this collective action.").  Notice by text message will be a secondary method of notifying potential Plaintiffs, and will only be used when mailed notices, due to non-

delivery, are returned and shown to Defendants.  Upon presentation of each piece of returned mail,

Defendants will then promptly furnish a telephone number to Plaintiffs' counsel within three (3)

business days.  The text message will state:

> You are receiving this text because you worked at the Materials Recovery Facility operated
> by the Baltimore County Department of Public Work in Cockeysville, Maryland while on
> work detail from the Department of Corrections.  A worker similar to you has brought a
> complaint under the Fair Labor Standards Act (FLSA), claiming he should have received
> at least the minimum wage for his work.  The U.S. District Court for the District of
> Maryland has issued an Order conditionally certifying a collective action under the FLSA
> and you have certain rights that you may exercise, but only within a certain amount of time.
> The details of that Order and its accompanying Opt-In Notice are attached for you review.

### iv. Opt-In Method

The Plaintiff requests that the Court approve a 60-day period in which potential Plaintiffs

may opt-in to this case, from the date of the U.S. mailing (a date to be certified by Plaintiff's

counsel).  A proposed Opt-In Notice is attached hereto, and the Plaintiffs request that the Court

approve the form.  (Exh. 3).  Plaintiff further requests that the Court approve the form and allow

for execution by electronic signature via the secure "docusign" electronic signature process.  See

Brandenburg v. Cousin Vinny's Pizza, LLC, 2017 WL 3500411, *8 (S.D. Ohio Aug. 15, 2017)

("the Court will permit potential opt-in plaintiffs to sign their Consent to Join forms electronically

via the DocuSign website if they so choose").

## IV.    Conclusion

Given the record presently before this Court, including the Plaintiff's Complaint and

Declaration, and the lack of opposition to this Motion, it is clear that the Plaintiff has made a

sufficient factual showing to satisfy the similarly situated requirement.

As a consequence, Plaintiff requests that the instant Motion To Conditionally Certify A

Fair Labor Standards Act Collective Action And For Approval Of And Facilitation Of Notice To

Potential Class Members be granted, and that the Court approve the attached notices to potential members of this collective action.

Respectfully submitted,

/s/_____
Howard B. Hoffman, Bar No. 25965
Jordan S, Liew, Bar No. 20509
Hoffman Employment Law, LLC
600 Jefferson Plaza, Suite 204
Rockville, Maryland 20852
(301) 251-3752
hhoffman@hoholaw.com
jliew@hoholaw.com

/s/ (with permission)_____
Bradford W. Warbasse, Esq.
Bar No.: 07304
P. O. Box 1284
Brooklandville, Maryland 21022
(443) 862-0062
warbasselaw@gmail.com

/s/ (w/ permission)_____
Stephen J. Springer, Esq.
*Pro Hac Vice*
Rittenhouse Plaza
1901 Walnut Street, Unit 4A
Philadelphia, Pennsylvania 19103
(215) 732-8229 (tele)
springerlaw@masn.com

*Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 23rd day of April, 2021, a copy of the foregoing Plaintiff's Motion To Conditionally Certify A Collective Action, along with all Exhibits and other attachments, was filed via the Electronic Case Filing System (ECF) maintained by the U.S. District Court for the District of Maryland, and is available for viewing and downloading from the ECF system.

_____/s/_____
Howard B. Hoffman
