**IN THE U.S. DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **Michael A. Scott, et al.** | * | |
| **Plaintiffs** | * | |
| **v.** | * | **Case No. 1:21-CV-00034-SAG** |
| **Baltimore County, Maryland** | * | |
| **Defendant** | * | |

_____/

## JOINT MOTION FOR ORDER PRELIMINARILY APPROVING SETTLEMENT AGREEMENT ESTABLISHING A SETTLEMENT CLASS PURSUANT TO FED.R.CIV. 23(e) AND 29 U.S.C. SECTION 216(b)

Plaintiff, Michael Scott, on behalf of himself and others similarly situated, and Defendant, Baltimore County, Maryland, by and through their respective undersigned counsel, moves this Court for an Order preliminarily approving a Settlement of the two existing Classes in this case, *i.e.*, the "Minimum Wage Class" certified by this Court pursuant to Fed. R. Civ. P. 23 for alleged violations of the minimum wage provisions of the Maryland Wage and Hour Law, Md. Code Labor and Employment Article Section 3-401 *et seq*., and a conditional "Opt-In" Class certified by this Court pursuant to the Fair Labor Standards Act, 29 U.S.C. Section 216(b). The Parties have entered into a settlement agreement to resolve this litigation by combining both Classes into a final "Settlement Class," from which Class Members can join or opt-out of.

### I.    BACKGROUND

On January 5, 2021, Michael Scott (hereafter "Class Representative") filed a hybrid action: (1) a collective action arising under the Federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. Section 201, *et seq.* and (2) a Rule 23 class action claim arising under the Maryland Wage and Hour Law, Md. Ann LE Art. Section 3-401, *et seq.*, and the Maryland Wage Payment and

Collection Law, Md. Ann LE Art. Section 3-501, *et seq*.  Since that time, the Court entered an Order granting Conditional Certification of an FLSA Section 216(b) "Opt-In" Class and separately entered an Order granting certification of a Rule 23 Class.  (ECF Docs. 21 and 94).  During an Opt-In period that ran from June 1, 2021 to July 31, 2021, an additional fifty-one individuals opted in to this lawsuit (hereafter "The Opt-In Plaintiffs").  (ECF Docs. 22-72).

The Class Representative, together with all FLSA Opt-In Plaintiffs, were incarcerated within the Baltimore County Department of Corrections and worked at the Baltimore County Material Recovery Facility (MRF) from January 5, 2018 to April 6, 2020.[1]  The Complaint alleges that Baltimore County failed to properly pay the Class Representative and the certified Rule 23 Class the minimum wage and overtime wages.

The Plaintiffs and Defendant agreed to bifurcate discovery in this case, first addressing the issue of liability and then addressing the issue of damages.  The Parties completed liability discovery on September 16, 2022, completing nineteen (19) depositions (twelve (12) of defendant witnesses and seven (7) of the Class Representative and Opt-In Plaintiffs).

The Parties filed Cross Motions for Summary Judgment with this Court, beginning on October 17, 2022.  Those Cross Motions ripened on March 27, 2023.  Defendant principally contended that the Class Representative, Opt-In Plaintiffs and the Certified Class were not "employees" within the meaning of 29 U.S.C. § 203(e), and therefore, had no cognizable cause of action under the FLSA (or its analog, the MWHL).[2]

---

[1]    The date when the "MRF detail" ended.

[2]    Claims for unpaid overtime under the MWHL and claims under the MWPCL were abandoned by the Class Representative, due to the fact that local government bodies cannot sued for such claims.  Strange et al. v. P.G. Cnty., MD, 2020 WL 4350373, *3-4 (D. Md. July 29, 2020).

On June 9, 2023, this Court granted summary judgment in favor of the Defendant, not needing to reach the issues raised by Plaintiff's Motion for Summary Judgment. (ECF Docs. 195, 196). On July 7, 2023, Plaintiff filed a Notice of Appeal to the U.S. Court of Appeals for the Fourth Circuit. (ECF Doc. 197).

Following briefing by the parties, the Fourth Circuit heard oral argument on March 19, 2024. On May 8, 2024, the Fourth Circuit issued a published decision, vacating the District Court's decision and remanding the case with further instructions. Scott v. Baltimore Cnty., Md., 101 F.4th 336 (4th Cir. 2024).

The Parties, returning to the District Court, thereupon proceeded to take up the issue of potential damages. (ECF Doc. 208). The District Court issued an Order denying Summary Judgment, and set a Trial date of November 3, 2025. (ECF Doc. 221). Additional written discovery was exchanged between the Parties, and deposition testimony was taken. Both Parties issued Rule 26 expert reports, identifying the amount of damages potentially owed, with the Defendant taking the position that the FLSA and MWHL allowed the Defendant to take a credit against minimum wages owed, for some or all of the costs of incarceration. Specifically, the Class identified as the maximum potential damages, $1,461,114.46 in lost minimum wage and overtime (totaling $2,922,228.92 with liquidated (double damages) included). Defendant's expert witness report, taking a credit that Defendant contends that it was allowed by law to take, identified the minimum potential damages as $0.00 due to the credit for the costs of incarceration.

Upon completing damages-related discovery, the Parties proceeded to engage in Magistrate-supervised mediation before the Hon. Erin Aslan. The Plaintiffs assembled a "Settlement Committee" consisting of the Class Representative (Michael Scott) and six Opt-In

Plaintiffs.   The Defendant was represented by their counsel, law department personnel for Baltimore County, and the Deputy County Administrator for Baltimore County.

The Parties have reached a settlement and signed a Settlement Agreement (Exh. 1) to resolve this collective and class action.   The Parties jointly submit this Motion as part of their request that the Court preliminarily approve the combination of the certified and remaining Rule 23 MWHL Class and the conditionally certified FLSA 216(b) Class, into a single Settlement Class pursuant to Fed.R.Civ. 23(e) and 29 U.S.C. Section 216(b), defined as follows:

> **Proposed Settlement Class**: Any and all persons who were incarcerated at the Baltimore County Detention Center, located at 720 Bosley Avenue, Towson, Maryland 21204, and who performed work at the Materials Recovery Facility ("MRF") at Baltimore County's Central Acceptance Facility ("CAF") during their incarceration between January 5, 2018 and April 12, 2020, and who during this period were paid less than the then-applicable Maryland state minimum wage, including the Class Representative (Michael Scott) and all persons who have previously opted into this case pursuant to 29 U.S.C. § 216(b) (FLSA Opt-In Plaintiffs).[3]  A person within the Proposed Settlement Class is a Proposed Settlement Class Member.

## II.    STANDARDS OF REVIEW

"The decision of '[w]hether to preliminarily approve a class action settlement lies within the sound discretion of the district court.' "[4]  Albert et al. v. Global Tel*Link Corp., et al., 20-1936-LKG, 2024 WL 4644631 (D. Md. Oct. 31, 2024) (quoting Stephens v. Farmers Rest. Grp., 329 F.R.D. 476, 482 (D.D.C. 2019)).  "In this regard, courts have recognized that 'there is an

---

[3]      $9.25 from January 5, 2018 until June 30, 2018; $10.10 from July 1, 2018 until December 31, 2019; $11.00 from January 1, 2020 to April 12, 2020.

[4]      The Fourth Circuit has stated that it gives "considerable deference … because the court 'is exposed to the litigants, and their strategies, positions[,] and proofs,' and 'is on the firing line and can evaluate the action accordingly.' "  In re: Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Pracs. & Prods. Liab. Litig., 952 F.3d 471, 484 (4th Cir. 2020) (quoting Joel A. v. Giuliani, 218 F.3d 132, 139 (2nd Cir. 2000)).

overriding public interest in favor of settlement, particularly in class action suits.' " Id. (quoting Lomascolo v. Parsons Brinckerhoff, Inc., 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009)). "In considering a motion for approval of a settlement agreement that purports to settle group claims under both the FLSA and state laws, the court examines whether the agreement satisfies the requirements of both the FLSA and Federal Rule of Civil Procedure 23." Curtis v. Genesis Engineering Solutions, Inc., 21-722-GLH, 2022 WL 1062024, *2 (D. Md. Apr. 8, 2022).

To preliminarily approve the parties' proposed settlement, the Court must find that the agreement satisfies the standards under both the FLSA and Rule 23, with those factors being similar. Curtis, 2022 WL 1062024, at *3. At this first stage, "the court examines the terms of the proposed settlement to determine whether it is 'within the range of possible approval, subject to further consideration at the final fairness hearing after interested parties have had an opportunity to object.' " Goodlaxson v. Mayor & City Council of Baltimore, No. CV JKB-21-1454, 2025 WL 90034, at *3 (D. Md. Jan. 13, 2025) (quoting CASA de Md., Inc. v. Arbor Realty Tr., Inc., Civ. No. DKC-21-1778, 2023 WL 6125531, at *4 (D. Md. Sept. 19, 2023)).

"After granting preliminary approval, the Court must then hold a Final Fairness Hearing, 'where arguments and evidence may be presented in support of, and in opposition to, the settlement.' " Curtis, 2022 WL 1062024, at *3 (quoting Shaver v. Gills Eldersburg, Inc., No. 14-cv-3977-JMC, 2016 WL 1625835, at *2 (D. Md. Apr. 25, 2016) (citing Fed.R.Civ.P. 23(e)).

### A. Federal Rule of Civil Procedure 23(e)

As stated in Fed.R.Civ.P. 23(e), the claims of an existing certified class, as in this case, can only be settled with the Court's approval. Fed.R.Civ.P. 23(e). "If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

**(A)** the class representatives and class counsel have adequately represented the class;

**(B)** the proposal was negotiated at arm's length;

**(C)** the relief provided for the class is adequate, taking into account:

    **(i)** the costs, risks, and delay of trial and appeal;

    **(ii)** the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    **(iii)** the terms of any proposed award of attorney's fees, including timing of payment; and

    **(iv)** any agreement required to be identified under Rule 23(e)(3); and

**(D)** the proposal treats class members equitably relative to each other."

Fed. R. Civ. P. 23(e)(2) (as amended, Dec. 1, 2018)

In evaluating class action settlements, the Fourth Circuit has described its historic factors as "almost completely overlap[ping]" the amendment to Rule 23(e)(2), which include a review of:

(1) the posture of the case at the time settlement was proposed;

(2) the extent of discovery that had been conducted;

(3) the circumstances surrounding the negotiations; and

(4) the experience of counsel in the area of [the] class action litigation.

In re: Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Pracs. & Prods. Liab. Litig., 952 F.3d at 484 & n.8

Moreover, although the Fourth Circuit has not enumerated factors for assessing a settlement's reasonableness, the Fourth Circuit has specified the following factors for assessing its adequacy:

(1) the relative strength of the plaintiffs' case on the merits;

(2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to

encounter if the case goes to trial;

(3) the anticipated duration and expense of additional litigation;

(4) the solvency of the defendant[ ] and the likelihood of recovery on a litigated judgment;

and

(5) the degree of opposition to the settlement.

In re: Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Pracs. & Prods.

Liab. Litig., 952 F.3d at 484.

As stated in Decohen v. Abbassi, LLC, 299 F.R.D. 469, 479 (D. Md. April 17, 2014), there

is a " 'strong presumption in favor of finding a settlement is fair.' " Decohen, 299 F.R.D at 479

(quoting Lomascolo, 2009 WL 3094955, at *10). "Because a settlement hearing is not a trial, the

[C]ourt's role is more 'balancing of likelihoods rather than actual determination of the facts and

law     in     passing     upon     ...     the     proposed     settlement.'     "

Id. (quoting Lomascolo, 2009 WL 3094955 at *l0).

### B. FLSA Collective Action Approval

Although the U.S. Court of Appeals for the Fourth Circuit has not issued any decisions on

whether, and under what circumstances, an FLSA case requires judicial approval,[5] as a general

matter, district courts have widely held that "[u]nder the FLSA, 'there is a judicial prohibition

---

[5]     See Flores v. Diverse Masonry Corp., No. 23-CV-03215-LKG, 2024 WL 2863575, at *3
(D. Md. June 6, 2024) ("While the United States Court of Appeals for the Fourth Circuit has not
directly addressed the factors to be considered when approving a FLSA settlement agreement,
'district courts in this circuit typically employ considerations set forth by the Eleventh Circuit in
[Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1354 (11th Cir. 1982)]. ' " (citations
omitted); but see Gilstrap v. Sushinati LLC, No. 1:22-CV-434, 2024 WL 2197824, at *13 (S.D.
Ohio May 15, 2024) (observing, at least in an individual FLSA case, "[t]he Court possesses no
authority to approve or to reject an FLSA settlement to which the parties have agreed.").

against the unsupervised waiver or settlement of claims.' " <u>Kianpour v. Restaurant Zone, Inc., et al.</u>, DKC 11-0802, 2011 WL 5375082, *2 (D. Md. Nov. 4, 2011) (<u>quoting</u> <u>Taylor v. Progress Energy, Inc.</u>, 493 F.3d 454, 460 (4th Cir. 2007)). "Nevertheless, '[c]laims for FLSA violations can … be settled when the settlement is supervised by the [Department of Labor] or a court.' " <u>Id</u>. (<u>quoting</u> <u>Taylor</u>, 415 F.3d at 374) (alterations in original); <u>see also</u> <u>Gionfriddo et al. v. Jason Zink, LLC, et al.</u>, RDB 09-1733, 2011 WL 2791136, *2 (D. Md. July 15, 2011) ("Settlement agreements that resolve claims pursuant to the FLSA must receive court approval.").  In general, Courts review FLSA settlements to ensure a fair and reasonable resolution of a bona fide dispute. <u>Duprey v. Scotts Co. LLC</u>, No. PWG-13-3496, 2014 WL 2174751, at *2 (D. Md. May 23, 2014).

Although the Fourth Circuit has not directly addressed the factors to be considered in approving FLSA settlements, "district courts in this circuit typically employ the considerations set forth by the Eleventh Circuit" in <u>Lynn's Food Stores v. United States</u>, 679 F.2d 1350, 1354 (11th Cir. 1982). <u>Saman v. LBDP, Inc.</u>, No. DKC–12–1083, 2013 WL 2949047, at *3 (D. Md. June 13, 2013) (<u>citing</u> <u>Hoffman v. First Student, Inc.</u>, No. WDQ–06–1882, 2010 WL 1176641, at *2 (D. Md. Mar. 23, 2010); <u>Lopez v. NTI, LLC</u>, 748 F.Supp.2d 471, 478 (D. Md. 2010)); <u>Simpson v. Pure Technologies U.S., Inc.</u>, 2018 WL 1851467 at * 2 (D. Md. Apr. 18, 2018).  "The settlement must 'reflect[ ] a fair and reasonable resolution of a bona fide dispute over FLSA provisions,' which includes a finding with regard to (1) whether there are FLSA issues actually in dispute, (2) the fairness and reasonableness of the settlement in light of the relevant factors from Rule 23, and (3) the reasonableness of the attorneys' fees, if included in the agreement." <u>Duprey</u>, 2014 WL 2174751 at *2 (<u>citing</u> <u>Saman</u>, 2013 WL 2949047 at *3); <u>see also</u> <u>Lomascolo</u>, 2009 WL 3094955, at *10; <u>Lane v. Ko–Me, LLC</u>, No. DKC–10–2261, 2011 WL 3880427, at *2–3 (D. Md. Aug. 31, 2011). "These factors are most likely to be satisfied where there is an 'assurance of an adversarial

context' and the employee is 'represented by an attorney who can protect [his] rights under the statute.'" <u>Duprey</u> at *2 (<u>citing</u> <u>Lynn's Food Stores</u>, 679 F.2d at 1354).

## III.    PRELIMINARY APPROVAL OF THE CLASS SETTLEMENT

### A. *Disputes and Other Factors Led to the Settlement*

During the course of this litigation – which has involved extensive discovery, motions, appeal, and two rounds of mediation – the Parties identified several disputes and other factors that lead to the settlement, some of which are outlined below:

**<u>Employee Status</u>**: Plaintiffs claim that while working for Defendant they were employees under the FLSA and MWHL and entitled to minimum wage and overtime under the FLSA and minimum wage under the MWHL.  Defendant maintains that Plaintiffs were not "employees" under either the FLSA and MWHL and were not entitled to the wage protections of those laws. This factual dispute would need to be resolved at trial with further appeals likely taken by either (or both) parties if they suffered an adverse decision or verdict.

**<u>Wage Credit</u>**:  Defendant maintained that even if the Plaintiffs were "employees," some or all of their wages were subject to a credit for the cost of "facilities" provided by the Defendant, namely, the cost of housing, food, medical care and other essentials provide to the Plaintiffs, who were incarcerated and in Defendant's custody and care.  Plaintiffs rejected the notion that the Defendant could take a credit of these costs against the Plaintiffs' wages, for a variety of reasons such as the fact that the Plaintiffs were subject to involuntary incarceration and that other incarcerated persons, who participated in private work release, were not charged monies for these facilities.  Alternatively, Plaintiff contended that even if some credit was allowed, it would not be in the amount that Defendant was claiming, and it would only serve to increase the "regular rate" of pay for purposes of minimum wage compliance but not serve as a credit against overtime

allegedly owed.  The resolution of this legal issue would need to be resolved prior to trial, with further appeals likely taken by either (or both) parties if they suffered an adverse decision or verdict.

**Alleged Damages (Working Time)**:  While there is some general agreement on the time of the day when the Plaintiffs began working, there was less clarity as to when the Plaintiffs stopped performing compensable work or the length and compensability of certain breaks.  These factual disputes would need to be resolved at trial requiring lengthy factual testimony.

**Other Factors**:  Defendant contends that it was not obligated to pay liquidated damages, as it had a "good faith" basis to contend that the Plaintiffs were not "employees" under the FLSA/MWHL.  Plaintiffs contended that the Defendant could not satisfy the strict requirements to avoid the imposition of liquidated damages (double damages), which an employer is normally obligated to pay.  See Rogers v. Sav. First Mortg., LLC, 362 F. Supp. 2d 624, 638 (D. Md. 2005) ("ignorance of the FLSA's requirements is not a defense to liquidated damages").  Further, Plaintiffs contended that even if liquidated damages were not owed, prejudgment interest would therefore be appropriate.  Calderon v. GEICO Gen. Ins. Co., 809 F.3d 111, 133 (4th Cir. 2015) ("we have noted in the FLSA context that "[n]ormally, '[p]rejudgment interest is necessary, in the absence of liquidated damages, to make the [plaintiff] whole").

Both parties considered the time and expense of an extremely lengthy trial.  The Plaintiffs could end up with nothing after lengthy and costly litigation but any Trial would still result in substantial expense for the Defendant.  Due to the risk of loss and to avoid the costs and inherent delays in litigation, the Parties mutually agreed to the settlement outlined below.

### B.  Terms of Proposed Settlement.

The Parties seek preliminary approval of the Settlement Agreement, attached as Exhibit 1.[6] "Preliminary approval of a class action settlement should be granted when the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or of segments of the class or excessive compensation for attorneys and appears to fall within the range of possible approval." Temp. Servs., Inc. v. Am. Int'l Grp., Inc., No. 3:08-CV-00271-JFA, 2012 WL 2370523, at *6 (D.S.C. June 22, 2012), superseded, No. 3:08-CV-00271-JFA, 2012 WL 13008138 (D.S.C. July 31, 2012).

In this case, the proposed Settlement Agreement is entitled to a presumption of fairness because it is the product of informed, non-collusive negotiations by experienced counsel, under the supervision and guidance of Magistrate Judge Aslan. The settlement has no obvious deficiencies and does not subject a single Class Member to any undue burden.  Moreover, the Settlement Agreement provides for a substantial recovery to the Class.

In exchange for a release of claims, the Class Representative, the Opt-In Plaintiffs, and all other Class Members who choose to participate in the settlement class (the latter group comprised of those who complete a Settlement and Release of Claim Form (Exh 1-A)) (collectively, the "Settlement Class Opt-in Claimants") will be entitled to their pro rata portion, based on their Base Damage and the total number of individuals that opt into the settlement, as determined pursuant to the Settlement Agreement, of the Gross Settlement Fund of $1,461,114.47 less any service fees

---

[6]    The Settlement Agreement was the product of two rounds of mediation, the first all-day mediation occurring on April 14, 2025 and the second all-day mediation was April 30, 2025.  Since April 30, 2025, the Parties have also communicated, together and separately with Judge Aslan on multiple occasions.

awarded, and less fees owed to the Claims Administrator, up to a maximum of 200% (two hundred percent) of their base damages. Base Damage for each Settlement Class Opt-in Claimant shall equal the damages calculated for each Settlement Class Opt-In Claimant in Method 3 and the corresponding Exhibit III ("Plaintiff's Expert Method 3") and Method 5 and the corresponding Exhibit V ("Plaintiff's Expert Method 5") of the February 24, 2025 report drafted by Michael Kimel, Ph.D., as amended and supplemented by Dr. Kimel's March 24, 2025 rebuttal report (collectively "Plaintiff's Expert's Methods 3 & 5"), relying on the daily work sign-in sheets, weekly pay records (titled "Weekly Time Sheet[s]"), bonus payment records (titled "Special Project Report[s]"), and daily production logs (titled "Daily Production") produced by Defendant in discovery; *provided* that the Base Damage for Proposed Settlement Class Members Naim Hodges ("Hodges"), David Folk ("Folk"), and Antonio Crawford ("Crawford") shall be increased to include overtime compensation calculated in accordance with Plaintiff's Expert Method 3, without any change to the work hours, or weekly or bonus payments received for Hodges, Folk and Crawford stated in Plaintiff's Expert Method 5.[7] Except as specifically set forth in the previous sentence concerning Folk, Crawford, and Hodges, the Base Damage for each Settlement Class Opt-In Claimant shall equal the amount calculated in Plaintiff's Expert's Methods 3 & 5. The "lookback" period for the damage calculations will be three years from the filing of the Complaint, i.e., from January 5, 2021 to January 5, 2018.

In addition, the Settlement Agreement provides for modest service payments (also referred in certain cases as "incentive awards" or "service fees") of varying amounts to the Class Representative, and specific Opt-In FLSA Plaintiffs whose assistance to the Class, according to

---

[7] The Class Representative is identified as a FLSA Opt-In Plaintiff in Plaintiff's Expert's Methods 3.

Class Counsel, was indispensable.  (Exh. 2; Hoffman Decl. ¶18).  These service payments will come from the Gross Settlement Fund ($1,461,114.47).

Specifically, Class Representative Michael Scott will receive an incentive (service) payment of Forty Thousand U.S. Dollars ($40,000.00) in addition to amounts owed for damages. According to Class Counsel, Michael Scott independently identified a potential legal violation under the FLSA; located and retained experienced counsel; agreed to file the case as a class action (as opposed to an individual claim); thoroughly assisted counsel in researching and pleading the FLSA violation; consistently throughout more than four years provided key information and background information to Class Counsel; was served written discovery and required to both answer written discovery and be deposed by Defendant's counsel; had his employment records with a subsequent employer subject to discovery via subpoena; provided sworn Declarations in support of class certification and opposition to summary judgment; and attended the mediation on April 14, 2025 and April 30, 2025.  Moreover, Class Representative Michael Scott is signing a general release of all claims.  (Exh. 2; Hoffman Decl. ¶19).

The Settlement Agreement also provides lesser service payments to six (6) Opt-In FLSA Plaintiffs.  Specifically, Opt-In FLSA Plaintiffs Adam Dulaj and Harold Snyder will receive $15,000.00 each, in addition to their damage payments.  According to Class Counsel, Dulaj and Snyder actively participated throughout the course of this case, working with Class Counsel on their investigation of the claims, responding to written discovery, sitting for deposition, providing the Class with Declarations in opposition to summary judgment (working with Class Counsel on same); and attending both days of mediation.  Class Counsel further avers that Dulaj and Snyder both provided their personal narratives that helped the Class as a whole demonstrate that there was the real prospect of misclassification.  (Exh. 2; Hoffman Decl. ¶21).

Other Opt-In FLSA Plaintiffs will also receive lesser service payments.  These include Opt-In FLSA Plaintiffs Christopher Hackley and Mark Mariner who will receive $5,000.00 each, and Kenneth Nierwienski and Aaron Kessler, who will receive $2,500.00 each.  According to Class Counsel, these Opt-In FLSA Plaintiffs were also involved in advancing the case, regularly providing information and assistance to Class Counsel, and serving on the Settlement Committee, attending the required mediations, and voting on prospective settlement terms.  (Exh. 2; Hoffman Decl. ¶22).

In general, these service payments are reasonable in light of the fact that the service payments operate to compensate for any time incurred in assisting Class Counsel's investigation and discovery of the class wide claims, serving as plaintiffs with unique contributions to the prosecution of the case, as a member of the Settlement Committee during the settlement conference, and for any risk to reputation.  (Exh. 2; Hoffman Decl. ¶24).

The fees and costs to be reimbursed by Defendant will be $2,310,900.00.   These fees involved thousands of hours of work involving a contested class action with more than 20 depositions; review of more than 100,000 documents (and investigation and search for documents maintained by third parties); class certification; regular communications with class members (both individually and as a whole); extensive legal research and motions practice; an appeal with oral argument, followed by a published opinion by the U.S. Court of Appeals for the Fourth Circuit, an appearance and briefing at the U.S. Supreme Court; expert witness damage calculations; and time preparing and attending mediation.  (Exh. 2; Hoffman Decl. ¶13).

Fees and costs to be awarded to Class Counsel were negotiated separately and secondarily (only after a settlement fund was negotiated).  When negotiated in such a manner, there is less of a likelihood of any fraud or collusion. Bonetti v. Embarq Mgmt. Co., 715 F.Supp.2d 1222, 1228

(M.D. Fla. 2009) ("[T]he Court finds that the best way to insure that no conflict has tainted the settlement is for the parties to reach agreement as to the plaintiff's recovery before the fees of the plaintiff's counsel are considered.").  The value of these fees and costs have been substantially discounted from $4,254,875.00.  (Exh. 2; Hoffman Decl. ¶17).

The Parties have agreed on release language which is narrowly tailored for Class Members (although a general release for those receiving service payments).  Those who settle and receive payments will naturally waive all FLSA and MWHL claims.  All persons who opt-out of the settlement will preserve all rights.  Those who do not submit a claim form will be subject to a MWHL claims bar.

The Settlement Agreement provides that the notice issues will be administered by a Claims Administrator selected by the parties and paid for by the Defendant (the amount paid out of the settlement fund).

### C.  This Settlement Should Be Preliminarily Approved.

As discussed above, there are a number of factors that are specified in Fed.R.Civ.P. 23(e)(2) that the Court must consider in whether to preliminarily approve this settlement.  These factors are not intended to displace existing factors historically used by Courts.  Stephens v. Farmers Rest. Grp., No. CV 17-1087 (TJK), 2019 WL 2550674, at *5 n.3 (D.D.C. June 20, 2019) (observing that the Advisory Committee notes accompanying the 2018 Amendments to Rule 23(e) clarify that the four codified factors are not meant 'to displace any factor' deep-rooted in Circuit caselaw, but to 'focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.' Fed. R. Civ. P. 23, Advisory Committee Note, 2018 Amendments. For these reasons, while the Court will structure its

evaluation using the four factors outlined in Rule 23(e)(2), it will nevertheless specifically consider those factors that courts have tended to review in this Circuit.").

### i.    *Adequacy of Representation and Arm's Length Negotiation*

"Rule 23(e)(2)(A) and (B) direct the Court to consider the adequacy of class representatives' and class counsel's representation as well as whether the proposed settlement appears to have been negotiated at arm's length. These factors address 'matters that might be described as 'procedural' concerns, looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement.' " Stephens, 2019 WL 2550674, at *6 (quoting Fed. R. Civ. P. 23, Advisory Committee Note, 2018 Amendments, Subdivision (e)(2), Paragraphs (A) and (B)).

In this case, "[t]he class representatives participated in class counsel's factual investigation, offered testimony in support of class certification, and reviewed filings in the case," and therefore, adequately represented the class in this regard.  See Hu v. Plehn-Dujowich, No. 18-CV-01791-AGT, 2020 WL 12443171, at *1 (N.D. Cal. Mar. 2, 2020).  Moreover, the Opt-In Plaintiffs and the Class Representative were made aware of their roles as fiduciaries in the mediation process, (Exh. 2; Hoffman Decl. ¶23), and counsel for each Party are experienced in both wage/hour law and class actions, with each Party appearing in protracted motions contests in this Court and filing of appellate briefs at the Fourth Circuit and the U.S. Supreme Court.  (Exh. 2; Hoffman Decl. ¶5).

Finally, this settlement was the product of mediation overseen by a U.S. Magistrate Judge. Under the circumstances, there is no reason to doubt the fairness of this Settlement Agreement nor are there any obvious deficiencies in either the Settlement Agreement or the process in which the Settlement Agreement was reached. See Temporary Services, Inc., 2012 WL 2370523 at * 12 (Observing that "supervision by a mediator lends an air of fairness to agreements that are ultimately reached" and "[h]ere, highly adversarial litigation took place before being resolved by

a formal, in-person mediation session held before … a former U.S. district judge for the Southern District of New York"). The negotiations were principled and conducted at arm's length, with the ultimate goal of swiftly and fairly resolving the litigation for the benefit of all parties. (Exh. 2; Hoffman Decl. ¶12).

Accordingly, the Parties submit that Federal Rules of Civil Procedure 23(e)(2)(A) & (B) have been satisfied.

### ii.    *Adequacy of Relief and Relative Treatment of Class Members*

" 'Rule 23(e)(2)(C) and (D) direct the Court to consider whether the relief provided for the collective and the classes is adequate and whether the proposed agreement treats those members equitably relative to one another. These provisions "focus on what might be called the 'substantive' review of the terms of the proposed settlement.' " Stephens, 2019 WL 2550674, at *6 (citing Fed. R. Civ. P. 23, Advisory Committee Note, 2018 Amendments, Subdivision (e)(2), Paragraphs (C) and (D)).

"In determining whether a proposed settlement provides the class with adequate relief, Rule 23(e)(2)(C) instructs Courts to consider, as relevant here, the 'costs, risks, and delay of trial and appeal,' 'the effectiveness of any proposed method of distributing relief to the class," and "the terms of any proposed award of attorney's fees.' " Id. (citing Rule 23(e)(2)(C)(i)–(iii)). And in evaluating the overall fairness of a proposed settlement, the Fourth Circuit has historically looked at the strength of the merits, the existence of difficulties or strong defenses that may be encountered trial, and the anticipated duration and expense of additional litigation. See In re: Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Pracs. & Prods. Liab. Litig., 952 F.3d at 484.

While both Plaintiffs and Defendant maintain that they have respectively strong positions regarding the merits, both parties recognize the inherent risks and expenses moving forward to Trial, and that these settlement terms adequately address those risks and uncertainties.  If Plaintiffs were to prevail, even after possibly further appeals, the potential "maximum outcome" for the Plaintiffs would be $2,922,228.92, which includes liquidated (double) damages.   And, if Defendant's Section 203(m) credit was applicable (another major issue that could itself result in further appeals), the potential range of damages would run from $100,247.64 (including liquidated damages and for the FLSA Opt-In Plaintiffs only),[8] as predicted by Plaintiff's expert witness, to potentially nothing owed by Defendant (zero, $00.00), as predicted by Defendant's expert witness. It is difficult to predict with any exactitude the likelihood of how these issues might be resolved, and the Court can take notice that this case  has been vigorously litigated  for more than four years and involved one appellate reversal.

Here, given the highly uncertain risks that both parties face, and the lengthy appeals (possibly cross-appeals) that would most certainly follow any judgment in this case, the recovery of a settlement fund of $1,461,114.46 is a very fair resolution to this lawsuit.  Ultimately, the amount paid to each of the workers in this case (and in total, to the Class) will depend largely on the number of persons opting into the settlement, the total of which will be presented at the Final Fairness Hearing.

To be sure, the settlement fund will be reduced by the amount of service (incentive) awards to be paid to the Class Representative and several of the Opt-In Plaintiffs.  Those payments total $85,000.00.  Two of the service awards are in the amount of $2,500.00 (Kessler and Nierwienski);

---

[8]     Rule 23 Class Plaintiffs, who did not have overtime claims, would have received zero dollars if the Section 203(m) credit – at least in the amount claimed by Defendant – was applicable.

two service awards are in the amount $5,000.00 (Mariner and Hackley); two service awards are in the amount of $15,000.00 (Snyder and Dulaj); and one service award is in the amount of $40,000.00 for Class Representative and Lead Plaintiff, Michael Scott.  The rationale for those payments is discussed *supra* at pgs. 13-14.  The Defendant does not oppose these service (incentive) awards.

"Incentive awards are 'intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general' " and  " 'are fairly typical in class action cases.' " Berry v. Schulman, 807 F.3d 600, 613 (4th Cir. 2015) (quoting Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 958–59 (9th Cir.2009)); see also Low v. Trump Univ., LLC, 246 F. Supp. 3d 1295, 1313 (S.D. Cal. 2017), aff'd, 881 F.3d 1111 (9th Cir. 2018).  "Incentive awards are routinely approved in class actions to 'encourage socially beneficial litigation by compensating named plaintiffs for their expenses on travel and other incidental costs, as well as their personal time spent advancing the litigation on behalf of the class and for any personal risk they undertook.' " Helmick v. Columbia Gas Transmission, No. CIV.A.2:07-CV-00743, 2010 WL 2671506, at *3 (S.D.W. Va. July 1, 2010) (quoting Jones v. Dominion Res. Servs., 601 F.Supp.2d 756, 767 (S.D.W.Va.2009).

To determine whether an incentive payment is warranted, the court should consider "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." Decohen v. Abbasi, LLC, 299 F.R.D. 469, 483 (D. Md. 2014) (quoting Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998)).

In this case, Class Counsel submits that the incentive awards compensate the Class Representative and Opt-In Plaintiffs, and are reasonable and consistent with respect to each recipients' specific contributions to the Class, and towards its successful recovery, throughout the course of this lengthy litigation.  Plaintiffs submit that these service awards are in line with service awards in other contested class actions.  See, e.g., In re Zetia (Ezetimibe) Antitrust Litig., 699 F. Supp. 3d 448, 463–64 (E.D. Va. 2023) (approving five service awards of $30,000.00 each, and two service awards of $75,000.00 each, and reviewing case law and observing that the "requested incentive award amounts are in line with incentive awards that courts in this Circuit have previously granted[,]" citing among other cases, In re Titanium Dioxide Antitrust Litig., 2013 WL 6577029, at *1 (D. Md. Dec. 13, 2013) (awarding $125,000 to one class representative and $25,000 each to two other class representatives)); McCurley v. Flowers Foods, Inc., No. 5:16-CV-00194-JMC, 2018 WL 6650138, at *8 (D.S.C. Sept. 10, 2018) (approving $25,000.00 service fee to named plaintiff, where he provided "critical assistance to class counsel, participated in discovery, was deposed, communicated with other class members, attended mediation"); McBean v. City of New York, 233 F.R.D. 377, 391 (S.D.N.Y. 2006) (while observing that there is no evidence "to establish exactly what these representatives have done in furtherance of the settlement" the court nevertheless granted service awards ranging from $25,000.00 to $35,000.00, reasoning inter alia that "when compared to incentive awards given generally to named plaintiffs across a variety of class actions, the awards given to the class representatives under the settlement here fall solidly in the middle of the range"); Roberts v. Texaco, Inc., 979 F. Supp. 185, 203-04 (S.D.N.Y. 1997) (granting award of $85,000.00 to named plaintiff, reasoning inter alia that "Roberts, together with plaintiff Chambers, was a driving force in the initiation of this litigation and in its prosecution to a successful conclusion, a result that mightily benefited the Class"); Savani v. URS Pro. Sols. LLC,

No. 1:06-CV-02805-JMC, 2014 WL 172503, at *10 (D.S.C. Jan. 15, 2014) (approving incentive

award of $40,000.00 to named plaintiff); Brady v. Air Line Pilots Ass'n, Int'l, No. CV 02-2917

(JEI), 2014 WL 11395839, at *3 (D.N.J. May 29, 2014), aff'd sub nom. Brady v. Air Line Pilots

Ass'n, 627 F. App'x 142 (3d Cir. 2015) (granting incentive awards totaling $640,000.00 to twelve

named plaintiffs, with 8 such awards in excess of $40,000.00, observing that "such awards are fair,

reasonable, and reflect the efforts of the named plaintiffs").

The incentive (service) award to the Class Representative Michael Scott warrants further

discussion.   Class Representative Michael Scott is set to receive only $3,633.31, a fairly small

sum compared to the average potential recovery of $4,590.14 for FLSA Opt-In Plaintiffs  Plaintiff

Michael Scott was uniquely able to assess that the situation within Baltimore County's MRF raised

the specter of illegal wage violations.  (Exh. 2; Hoffman Decl. ¶19).  Plaintiff Michael Scott took

the time to research, interview and retain lawyers experienced in this area of law *and* willing to

take on a risky case on behalf of a class, and he authorized the filing of this hybrid collective/class

action.  (Exh. 2; Hoffman Decl. ¶19).  Plaintiff Michael Scott assisted counsel at each turn, from

pleading the case, to discovery, to summary judgment.  (Exh. 2; Hoffman Decl. ¶19).  Plaintiff

Michael Scott responded to written discovery and was deposed.  (Exh. 2; Hoffman Decl. ¶19).

Plaintiff Michael Scott's then-current employer was subject to a subpoena for records.  (Exh. 2;

Hoffman Decl. ¶19).  Since 2020, Plaintiff Michael Scott has communicated with counsel over

hundreds of occasions.  (Exh. 2; Hoffman Decl. ¶19).  Plaintiff Michael Scott carefully read all

briefing, including the briefing at the US Court of Appeals and U.S. Supreme Court.  (Exh. 2;

Hoffman Decl. ¶19).  Plaintiff Michael Scott participated in both rounds of mediations.  (Exh. 2;

Hoffman Decl. ¶19).  Plaintiff Michael Scott is signing a general release of claims.  (Exh. 2;

Hoffman Decl. ¶19).  Had this risky and uncertain case not settled or resulted in a favorable

judgment, Plaintiff Michael Scott may have been exposed to a ruinous Bill of Costs, that would have easily resulted in his bankruptcy. (Exh. 2; Hoffman Decl. ¶20).

Plaintiff Michael Scott uniquely assumed the risk and responsibility to benefit the entire Class, even though his claim was not the largest, in a case where the law was uncertain and under-developed. By stepping forward and diligently performing his duties as Class Representative, he has performed a valuable service to hundreds of Class Members and furthered the development of case law in this area (thereby providing a societal benefit, extending far beyond just this proceeding). Without his keen eye and intellect, and his steadfast involvement, this case would never have been brought. (Exh. 2; Hoffman Decl. ¶20). Given the level of involvement, the risk taken and the outcome secured for the Class, Class Counsel submits that Plaintiff Michael Scott is deserving of an incentive (service) fee of $40,000.00. See In re Peanut Farmers Antitrust Litig., No. 2:19-CV-00463, 2021 WL 9494033, at *8 (E.D. Va. Aug. 10, 2021) (approval of a $40,000 service award for each of the six Class Representatives).

Finally, Class Members have been treated fairly and adequately with respect to the issue of attorneys' fees and costs to be paid by Defendant. Berry v. Schulman, 807 F.3d 600, 618 n.10 (4th Cir. 2015) ("Because class counsel's fee is to be paid entirely by Lexis, it does not reduce the (b)(2) Class's recovery"). Attorneys' fees and costs, discussed in greater depth infra at pgs. 24-36, were negotiated and resolved in a second mediation following a tentative settlement of the amounts to be paid to the workers' settlement fund. Berry, 807 F.3d at 618 n.10 ("The parties did not even begin to negotiate class counsel's fee until after the substantive terms of the Agreement were finalized, making it far less likely that counsel could have traded off the interests of class members to advance their own ends"). Like the first mediation, the second mediation was presided over by the Hon. Erin Aslan. (Exh. 2; Hoffman Decl. ¶13).

Moreover, not only were fees negotiated separately and secondarily, any unclaimed funds from the Settlement Fund will not revert to pay attorneys' fees and costs. (Exh. 1). (Therefore, the settlement committee – represented by Class Counsel – has placed the interests of the Class first and foremost and has a full interest in seeing that the number of workers opting into the settlement fund remains high, as there is no fiscal benefit to Class Counsel for unclaimed funds).

## V.  NOTICE TO THE SETTLEMENT CLASS

Under Fed. R. Civ. P. 23(e), class members are entitled to notice of the proposed settlement and an opportunity to object or opt-out before it is finally approved. Notice to the class should establish the time and place of a public hearing on the proposed settlement and specify the procedure for opting out, filing objections, and appearing at the settlement hearing.

The Parties propose a Notice of Wage/Hour Class Action Settlement, Settlement Hearing, and Claims Procedure ("Notice") (Exh. 1-B) that fully complies with Rule 23(e) and with the requirements of Due Process. The Notice is written in plain English and includes: (1) a description of the Settlement class; (2) a description of the proposed Settlement; (3) the names of counsel for the class; (4) a fairness hearing date; (5) a statement of the deadlines for filing objections to the Settlement, for submitting a claim, and for filing requests of exclusion; (6) the consequences of such exclusion; (7) the consequences of remaining in the Settlement class; (8) a statement of the Defendant's responsibility for Settlement class counsel's fees and expenses; and (9) information on how to obtain further information.

Moreover, the Settlement Agreement provides that notices will be mailed to the last known mailing addresses for all Class Members. There will also be a text notification to Class Members from the Claims Administrator, with a link to a website set up by the Claims Administrator. There will be further text reminders to those Class Members who are unresponsive.  The Claims

Administrator will also utilize social security numbers of Class Members, provided by the Defendant, whose initial mailing is returned as undeliverable.

The form and content of the Notice, together with the manner of dissemination set forth above is reasonably calculated to reach all Class Members.  It is the "best notice practicable" under the circumstances and more than satisfies the requirements of Due Process and Rule 23.  The Notice will detail the amount of the settlement fund, how the settlement fund monies will be divided, and will further detail the amount of attorneys' fees and costs that the Defendant will pay, which is separate and apart from the settlement fund.

## VI. THE PARTIES HAVE REACHED A REASONABLE RESOLUTION OF ATTORNEYS' FEES AND COSTS.

The Parties have also reached a reasonable resolution of contested claims for attorneys' fees and costs.  The Defendant has agreed to pay $2,310,900 for attorney's fees and costs, to fully compensate counsel for the Class for all attorney's fees and costs incurred through the execution of the Settlement Agreement, plus any attorney's fees and costs incurred in all future proceedings in this litigation, including those necessary to effectuate the settlement and obtain dismissal of the case with prejudice.

As noted above, attorneys' fees and costs were negotiated separately and secondarily, in a second full day of mediation.[9]  (Exh. 2; Hoffman Decl. ¶12).  Prior to this second mediation, lead counsel (Howard B. Hoffman) provided defense counsel with a 14 page chart, detailing the work performed throughout more than four years of this litigation, including work at the U.S. Court of Appeals for the Fourth Circuit and the U.S. Supreme Court.  Hourly rates for the attorney timekeepers in this case were set forth in this chart. Prior to this second mediation, Hoffman sent

---

[9]      The second mediation was also attended by the "settlement committee" consisting of the Plaintiff Michael Scott and several opt-in Plaintiffs.

Defense Counsel a letter identifying a demand for fees/costs, in the amount of $3,632,200.00. Negotiations resulted in a total reduction of $1,522,475.00. None of these fees/costs have been charged to the Plaintiffs or will reduce their settlement share.

The resolution of attorneys' fees and costs should be preliminarily approved. Under Fed.R.Civ.P. 23(h), "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Similarly, the FLSA provides that in a collective action, a court shall "allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b).

The U.S. Supreme Court has opined that consensual resolution of attorney's fees, as was achieved by the Parties in this action, is ideal. <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 437 (1983) ("A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee."). The reasonableness of a settlement of attorneys' fees and costs "can be deduced by evidence of an arm's-length negotiation or an agreement by Defendants to a certain amount of fees that does not affect the relief afforded to a settlement class."[10] <u>McCurley</u>, 2018 WL 6650138, at *2.

While this is not a contested fee petition because Defendant has agreed to pay attorney's fees and costs directly, the method to award fees in a contested fee petition can provide guidance into the reasonableness of the fees and costs. <u>Id.</u> at *3. If the goal of fee litigation is to " 'do rough

---

[10]    The Court can observe that the Parties engaged in extensive discovery and motions practice, and there is no reason to believe that the parties colluded in reaching the settlement. <u>Vaughns v. Bd. of Educ. of Prince George's Cnty.</u>, 18 F. Supp. 2d 569, 579 (D. Md. 1998) ("The Court's observation of the parties' efforts in discovery and at trial confirms that this has been a hard-fought engagement without the least breath of collusion involved in the settlement. Each party was willing to go the full distance, each expended considerable effort and resources along the way. Settlement negotiations were protracted and much of the time were, as earlier noted by the Court, supervised by a Court-appointed mediator, Lawrence A. Shulman, Esq. Discussions were detailed and adversarial").

justice, not to achieve auditing perfection' " <u>see generally</u> <u>De Paredes v. Zen Nails Studio LLC</u>, 134 F.4th 750, 753 (4th Cir. 2025) (<u>quoting</u> <u>Fox v. Vice</u>, 563 U.S. 826, 838 (2011)), then *a fortiori,* the same must be true on a Motion for Preliminary Approval involving the settlement of fees and costs.[11]  As the U.S. Supreme Court has warned that even in contested fee applications, District Courts "need not, and indeed should not, become green-eyeshade accountants." <u>Fox</u>, 563 U.S. at 838. "[T]rial courts may take into account their overall sense of a suit and may use estimates in calculating and allocating an attorney's time." <u>Id.</u>  These principles are equally applicable, in the posture of this case.

There is a three-step process to determine a reasonable attorney fee award.  Under this three-step process, a District Court multiplies the number of hours reasonably worked by a reasonable hourly rate. <u>Berry</u>, 807 F.3d at 617 n. 9.  It "can then 'adjust the lodestar figure using a 'multiplier' derived from a number of factors, such as the benefit achieved for the class and the complexity of the case.' " <u>Id.</u>; <u>see also</u> <u>Randolph v. PowerComm Constr., Inc.</u>, 780 F. App'x 16, 22 (4th Cir. 2019) ("To properly calculate an attorney's fees award, courts undertake a three-step process: (1) determine a lodestar figure; (2) subtract fees for hours spent on unsuccessful claims unrelated to successful ones; and (3) evaluate the degree of success of the plaintiffs.")

In this case, Class Counsel has expended no less than 4,670 hours, although the exact hours will not be known until after the Final Fairness Hearing and all claims have been paid, with the case dismissed.[12]  The hourly rates claimed by the Class Counsel are as follows:

---

[11]    At the Final Fairness Hearing, Class Counsel can address any specific objections. <u>Goodlaxson</u>, <u>supra</u>; <u>Millan v. Cascade Water Services Inc.</u>, 310 F.R.D. 593, 613 (E.D. Cal. 2015) ("the Court need not resolve this matter at the preliminary approval stage, since the propriety of the fee request is an issue that can be determined at the Final Fairness Hearing.").

[12]    Time records are not being produced given their voluminous nature. <u>Duvall v. O'Malley</u>, No. CV ELH-94-2541, 2016 WL 3523682, at *12 n.7 (D. Md. June 28, 2016) (approving fees in a settled class action, relying on Declarations alone, and observing "[g]iven Judge Sullivan's

- Howard B. Hoffman, Attorney @ $1,000/hour (25 years, UMAB Law (1999))
- Jordan S. Liew @ $750/hour (8 years, Georgetown University Law Center (2016))
- Prof. Stephen Goldblatt, of GULC @ $1,000/hour (55 years, Georgetown University Law Center (1970))[13]
- Steven Springer @ $1,000/hour (55 years, Univ. of Pennsylvania School of Law (1970))
- Bradford W. Warbasse @ $1,000/hour (40 years, Boston Univ. School of Law (1985))
- Paralegal @ $250/hour

(Exh. 2; Hoffman Decl. ¶25)[14]

Class Counsel therefore claims an average lodestar fee amount no more than $820.35/hour. This lodestar figure "is presumptively reasonable except 'in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee.' " Randolph, 2019 WL 3072555, at *4 (4th Cir. July 11, 2019) (quoting Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 554 (2010) (referring to the presumption as a "strong one"). "To ascertain what is reasonable in terms of hours expended and the rate charged, the court is bound to apply the factors set forth in *Johnson v. Georgia Highway Express Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974)." McAfee v. Boczar, 738 F.3d 81, 88 n.5 (4th Cir. 2013), as amended (Jan. 23, 2014).

The Fourth Circuit has identified the twelve Johnson factors as: 1) The time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney;

---

involvement and careful review of the issue, I see no need for counsel to submit their actual billing records. The length of the record and the obvious volume of work speak for themselves.").

[13]    Professor Goldblatt assisted counsel at various levels with the appellate work at the U.S. Court of Appeals and U.S. Supreme Court.

[14]    Greater biographical information will be shared in the motion seeking final approval.

(10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.  Id. at n. 5. (citing Barber v. Kimbrell's Inc., 577 F.2d 216, 226 n. 28 (4th Cir.1978)).

The claimed lodestar fees in this case are thus $3,833,875.00.   The amount settled upon is $2,310,900.00, involving a deduction of $1,522,475.00 (a 40 % percent reduction).   The average hourly rate (all timekeepers) is thus **$492.21**.

A deduction in this amount, supervised by a Magistrate Judge in a mediation and reached with a determined adversary should be presumptively, if not conclusively, reasonable.  Any fat has certainly been trimmed from the claimed fees.   Nevertheless, and to the extent necessary, Class Counsel addresses the following Johnson/Barber factors for purposes of this preliminary motion.[15]

### i.    *Time and Labor Expended*

As Exhibit 2 reveals, Class Counsel (principally Hoffman Employment Law, LLC), engaged in initial case evaluation, factual research and pleading.  This included evaluating the strengths and weakness of the case and conducting extensive bi-furcated discovery into Defendant's practices.   This involved extensive document review, depositions of numerous witnesses; consultation with economic experts, and legal research and writing related to a number of significant contested discovery motions and relating to Summary Judgment.  Class Counsel pursued an appeal to the Fourth Circuit and opposed Defendant's request for Writ of Certiorari from the U.S. Supreme Court.  Following the Fourth Circuit's appeal, Class Counsel conducted additional depositions, subpoenaed numerous witnesses, retained and consulted with expert

---

[15]     This Johnson/Barber factor proffer is submitted by Class Counsel.  Defendant takes no position, other than to note that it is unopposed for purposes of this Motion.

witnesses (producing damage calculations for a Class of over 450 individuals); engaged in a two-day mediation, all while fielding questioning from settlement Class Members and frequently corresponding with opposing counsel regarding a variety of issues.[16]  (Exh. 2; Hoffman Decl. ¶13).

The number of hours devoted to the case (estimated, as the case is not complete) are reasonable in light of the nature of the case, the bi-furcated discovery, and the motion and appellate work that has occurred since the initiation of this case more than four (4) years ago on January 5, 2021.  This factor favorably supports the fee/cost award in this case.

### ii.    *Novelty and Difficulty of the Questions Presented*

The issues involved in this case are novel, as the *potential* for employee status for incarcerated persons has seldomly been addressed in the history of the FLSA, and one of five cases nationwide in the history of the FLSA.  As this Court is aware, the FLSA rights of incarcerated workers are generally dismissed by Courts.  While FLSA cases are common, the facts of this case were very unique and required counsel who possessed a level of expertise in complex FLSA litigation.   The work involved specialized expertise before the U.S. Supreme Court, where the issues of whether certiorari should be granted were separate from the issues presented in the District Court or the Fourth Circuit.  (Exh. 2; Hoffman Decl. ¶6).

Moreover, with this case set for Trial in November, the ability of the Class to prevail on the merits of this litigation, like all contested matters, was uncertain.  Defendant would continue to press that the Class were not employees under the FLSA and that even if they were, that some or all of the costs of their incarceration could serve as a "credit" against their owed wages.  Either of these issues, taken alone, could significantly narrow or eliminate Plaintiff's potential recovery.

---

[16]    At the time that this case settled, the second-stage of bi-furcated discovery had closed (with the exception of certain expert witness issues).

The case could have returned to the Fourth Circuit for a number of issues, including contested evidentiary issues and their impact upon a trial judgment. This factor favorably supports the fee/cost award in this case.

### iii.    The Skill Needed to Perform the Legal Services Properly

Given the novelty and difficulty of the issues in this case (at the trial and appellate court levels), the skill needed to perform the legal services properly required counsel who were not just experienced in wage/hour law, but also complex hybrid collective/class actions. Furthermore, the skills required attorneys experienced at the Fourth Circuit, including the presentation of oral argument. Damages issues were complicated and required further substantive knowledge of the FLSA. This factor favorably supports the fee/cost award in this case.

### iv.    Class Counsel's Opportunity Costs in Pursuing the Litigation

Class Counsel is a small law firm that represents employers and employees. It provides advice and counseling to employers, along with representation in various areas of human resources management. It also provides litigation to individuals and employers throughout the DMV area. Employer litigation is performed on an hourly rate practice model with individual litigation running the gamut, but mostly statutory fee litigation, such as this. Class Counsel is referred many clients (employer and employee) in the Mid-Atlantic. (Exh. 2; Hoffman Decl. ¶9)

This case is not the longest running "statutory fee" case in the career of Class Counsel (Howard Hoffman), (Exh. 2; Hoffman Decl. ¶14), but it is the most expensive and most time-consuming case in the career of Class Counsel (Howard Hoffman). (Exh. 2; Hoffman Decl. ¶14). For over four years, the litigation has materially impacted Class Counsel, including earnings, as it was not only unable to pursue other matters but also invested heavily in the costs of the case (not to mention the costs to maintain a Firm and pay salaries for support staff). (Exh. 2; Hoffman Decl.

¶14)  This litigation has also materially impacted *other* client work, by requiring extensions and causing delays in work for fee-paying clients.[17]   The Firm has turned down work during the pendency of this case.  (Exh. 2; Hoffman Decl. ¶14).  Class Counsel took this case on a contingent basis, working without compensation for over four and half years.[18]  Class Counsel covered all expenses and costs associated with litigation and settlement efforts and assumed the risk that they may not recover for these expenses and costs.  (Exh. 2; Hoffman Decl. ¶14).  This factor favorably supports the fee/cost award in this case.

### v.      The Customary Fee for Similar Work

Because there are no similar cases, there is no "customary fee" that can be considered here. The hourly rates in Appendix B are now 11 years old and complete reliance upon them to set hourly rates, especially in a case such as this is an abuse of discretion.[19]  See De Paredes v. Zen Nails Studio LLC, 134 F.4th 750, 754 (4th Cir. 2025) (Courts "may not treat court-produced fee matrices as setting a baseline from which departures are disfavored and require special justification").  The Court can take judicial notice that class actions with a shorter duration, with less appellate work, and with less substantive risk have resulted in substantially *greater* hourly rate awards than what is proposed here.  At least one Court in this District has recognized that an

---

[17]      In this regard, "priority work that delays the lawyer's other work is entitled to some premium." Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 718 (5th Cir.1974).

[18]      Assuming final approval, over 5 years will elapse before Class Counsel receives any payments for the work performed in this litigation.

[19]      "[T]he Fourth Circuit has recently rejected the 'anchoring effect' of the rates in Appendix B and held that 'the court may not elevate a matrix above all other types of evidence or treat a matrix as establishing a presumptive answer or range of answers.' " Tala v. Seba, No. CV 24-3598-BAH, 2025 WL 1638508, at *5 (D. Md. June 9, 2025) (quoting De Paredes, 134 F.4th at 754).  This Court has also approved of attorneys' fees in excess of the fees set forth in Appendix B, when parties have agreed upon them.  Sutton v. Cap. City Motorsports LLC, No. CV 8:24-1665-AAQ, 2025 WL 385773, at *4 (D. Md. Feb. 4, 2025) (observing that the Court approved rates higher than Appendix B rates in FLSA settlements "when all parties have agreed to them").

upward departure from Appendix B may be warranted when the case involves a class action or involves a precedent setting decision. Ramnarine v. Rainbow Child Dev. Ctr., Inc., No. 17-CV-02261, 2022 WL 16709764, at *7 (D. Md. Nov. 4, 2022), report and recommendation adopted, No. DKC-17-2261, 2023 WL 1416031 (D. Md. Jan. 31, 2023) ("while I do not recommend that the Court accept Plaintiff's request for higher rates in this particular case, this is not to say that, in a different case, a departure – even a significant one – may not be appropriate. As this Court has acknowledged, while the [Appendix B] guidelines are presumptively reasonable, they are not binding. For example, in an action such as Duvall, in which counsel: 1) undertook representation of a party who otherwise may not be able to find representation; 2) was able to achieve significant systemic reform; 3) establish significant new legal precedent; and/or 4) successfully certify a class, a significant departure [from Appendix B] may be appropriate.")

Here, the proposed fee/cost payment to Class Counsel is a reasonable multiple of the lodestar, i.e., the time actually invested in the case. Class Counsel will receive a reasonable risk-adjustment payment for the contingent risk in this case for the significant time and cost investment. Class Counsel received no hourly payments or any other compensation from the Class Representative or any other Plaintiff. (Exh. 2; Hoffman Decl. ¶29). This factor favorably supports the fee/cost award in this case.

### vi.    Attorney Expectations at the Outset of the Litigation

Class Counsel expected to be rewarded for his efforts (if successful) in the form of a significant attorney's fee for results obtained for the benefit of the Class. Class Counsel knew that in filing this lawsuit, there were risks. But Class Counsel never, at the outset of this case, thought that this case would result in such a time and cost commitment for a relatively small legal practice. (Exh. 2; Hoffman Decl. ¶14).

Because Class Counsel represented Plaintiff on a contingency basis, Class Counsel took on significant risk of non-payment, the burden of advancing litigation expenses, and the substantial opportunity cost of having to turn down other potentially lucrative work (including other FLSA class work involving less risk). These risks motivated Class Counsel to perform work of the highest quality and in appropriate quantity, in order to fulfill their fiduciary commitment to the Class. (Exh. 2; Hoffman Decl. ¶14). Class Counsel also had a great deal at stake because this litigation presented a threat to the core earnings of the Firm. This fact, and others, compelled Class Counsel to litigate vigorously against a determined defense, which in turn increased the time and energy required by Class Counsel to prosecute the case to a successful conclusion. (Exh. 2; Hoffman Decl. ¶14) "In complex and multi-year class action cases such as this, the risks of the litigation are immense and the risk of receiving little or no recovery is a major factor in awarding attorney's fees." Savani v. URS Pro. Sols. LLC, No. 1:06-CV-02805-JMC, 2014 WL 172503, at *5 (D.S.C. Jan. 15, 2014) (citing Phillips v. Crown Cent. Petroleum Corp., 426 F. Supp. 1156, 1170 (D. Md.1977) (In cases "in which counsel are employed on a contingent fee basis, the prospect of compensation beyond standard hourly rates should be held out as an inducement to encourage competent counsel to act as a private attorney general and bring civil actions"). The risk of no recovery in this complex case was not merely hypothetical: summary judgment was granted against the Class and all counsel assumed the real prospect that the U.S. Supreme Court could grant certiorari (*typically, though not always, resulting in reversal). As the Fourth Circuit said nearly sixty years ago:

> The contingency of compensation, whether it stems from an employment contract or results from the claimant's indigency, is highly relevant in the appraisal of the reasonableness of any fee claim. The effective lawyer will not win all of his cases, and any determination of the reasonableness of his fees in those cases in which his client prevails must take account of the lawyer's risk of receiving nothing for his services. Charges on the basis of a minimal

hourly rate are surely inappropriate for a lawyer who has performed creditably when payment of any fee is so uncertain.

McKittrick v. Gardner, 378 F.2d 872, 875 (4th Cir. 1967).

Because of the high-stakes nature of this case, this factor favorably supports the fee/cost award in this case.

### vii.    Time Limitations Imposed by the Client or Under the Circumstances

This factor has been previously addressed, *supra*, at Johnson/Barber factor # iv.  But given the magnitude of the work in this case, it is quite obvious that the work substantially limited the availability of Class Counsel to take on other client matters (or handle those, without schedule interruption).  The factor favorably supports the fee/cost award in this case.

### viii.    The Amount in Controversy and the Amount Obtained

"[T]he most critical factor is the degree of success obtained."  Hensley, 461 U.S. at 436.  "The result is what matters."  Id. at 435 (emphasis added).

In bringing this case, it is Plaintiffs' position that Class Counsel achieved a historic victory before the Fourth Circuit.  In this Circuit, Plaintiffs are aware of no other incarcerated persons that had ever successfully appealed a dismissal of their FLSA claims for the work they performed.  Following the Fourth Circuit's  decision, the Parties settled their claims, creating a settlement fund based upon $1.00 for each $1.00 allegedly unpaid (1x), according to alleged Class losses.  While the settlement fund will have incentive (service) fees and claims administrator fees reduce the overall recovery, there is the prospect that workers will receive up to two dollars for each dollar lost (2x), depending on the subscription level to the Settlement.  The fact that the Class *might* not receive full liquidated damages, or statutory damages that they could have received on their "best day in Court" does not subtract from the fact that the Class will receive substantial benefits in their favor.  Moreover, Plaintiffs maintain that this case has established an important precedent which

serves important societal benefits including adding clarity to the law. <u>Amaya v. Power Design, Inc.</u>, No. CV 14-00446-JMC, 2018 WL 690838, at \*5 (D. Md. Feb. 2, 2018) (declining to find a lack of success, for two reasons: (1) "when a case ultimately resolves by way of settlement, it is inappropriate for a court to simply compare the damages set forth in the complaint with the amount of the settlement[;] and (2) "through their successful appeal, the Plaintiffs clarified a previously unanswered question of law … that will benefit future plaintiffs similarly situated. When the effect of a case reaches well beyond the Plaintiffs themselves and serves a public purpose, appropriate weight is to be afforded."); <u>Baird v. Boies, Schiller & Flexner, LLP</u>, 219 F.Supp.2d 510, 520 n.7 (S.D.N.Y. 2002).

Given the risk of a verdict in favor of the Defendant (or a verdict in favor of Plaintiffs, but reversed on appeal), versus the positive outcome of the settlement, this factor favorably supports the fee/cost award in this case.

### ix.    Class Counsel's Experience and Reputation

The attorneys serving as Class Counsel have expertise in complex litigation and a history of success on difficult, high-stakes litigation.  (Exh. 2; Hoffman Decl. ¶4-6, 26).  This factor favorably supports the fee/cost award in this case.

### x.    Undesirability of Case

Courts may enhance attorney's fees "when the prevailing party can establish that, absent an adjustment, [the plaintiff] 'would have faced substantial difficulties in finding counsel in the local or other relevant market.' " <u>Lewis v. J.P Stevens & Co.</u>, 849 F.2d 605, 1988 WL 60546, \*4 (4th Cir. 1988) (citation omitted).  Lawsuits may be undesirable given the novelty or difficulty of the issue or face long and difficult odds.  <u>Alexander v. Hill</u>, 553 F. Supp. 1263, 1267 (W.D.N.C. 1983) ("Few lawyers are willing to devote large amounts of time and energy to protecting the

rights of people who can't pay legal fees. This sort of case is often frustrating and thankless and requires great dedication, particularly where defendants' violation of the law continues for the better part of a decade. This factor indicates the fees should be adjusted upward").  In this case, Class Counsel took on this complex, expensive, and time-consuming case on a contingency basis, with no guarantee of payment unless the litigation was successfully resolved by settlement or judgment. Class Counsel brought this case knowing they would face vigorous, hard-fought litigation from a highly motivated opponent and skilled counsel.  The complexity and high risks involved – which are especially elevated with regards to inmate FLSA cases – makes this case highly undesirable.  This factor favorably supports the fee/cost award in this case.

### xi.    *Nature and Length of the Professional Relationship between Attorney and Client*

Class Counsel has already addressed the nature and length of this case (its service on behalf of the Class) and therefore will not further address this factor unless requested by the Court.

### xii.    *Attorneys' Fees in Similar Cases*

Class Counsel also submits that this factor has already been adequately addressed.  The case was risky and required counsel to enter an appearance and file papers with the U.S. Supreme Court.  Class Counsel will not further address this factor unless requested by the Court.

In sum, given the risks of the case (both time and money); the labor and work required of counsel; appearances in multiple Courts the Fourth Circuit's published decision; and the overall positive result incurred through counsel's skill and determination, Class Counsel submits that the settled upon fee/cost amount is extremely reasonable, and as a result, should be preliminarily approved.  (Exh. 2; Hoffman Decl. ¶10).

## VII.    THE COURT SHOULD APPROVE THE CLAIMS ADMINISTRATOR.

The Parties have mutually agreed that Rust Consulting will be the Claims Administrator in this case.  Rust Consulting is highly experienced in handling the administration of class action settlements.  They were selected and mutually agreed upon after a lengthy vetting process by both Parties, including video conferences and numerous emails with a company representative in order to answer any questions, address any issues, and discuss the terms of the engagement.  The Parties are mutually satisfied that Rust Consulting will be an appropriate Claims Administrator for this settlement process, and respectfully request that the Court approve Rust Consulting as Claims Administrator.

## VIII.    CONCLUSION

For all the foregoing reasons, the Parties respectfully request that the Court grant this Motion and preliminarily approve the Settlement Agreement.  Under an analysis of FLSA case law or an analysis of the proposed settlement of MWHL claims brought pursuant to Rule 23, the proposed Settlement Agreement is fair, reasonable and adequate, and there is no reason to doubt its fairness.  Defendant joins in the request for relief in the present motion without endorsing or joining in the characterizations made by Plaintiffs and Class Counsel.

Respectfully submitted,

/s/ *Howard B. Hoffman*                       /s/      *(signed with permission)*
Howard B. Hoffman                            Kraig B. Long (Fed. Bar No. 25747)
Federal Bar No. 25965                        Jeffrey T. Johnson (Fed. Bar No. 19876)
Jordan Song En Liew                          Samuel E. Amon (Fed. Bar. No. 31351)
Federal Bar No. 20509                        Nelson Mullins Riley & Scarborough,
Hoffman Employment Law, LLC                  LLP
2400 Research Blvd., Suite 380               100 S. Charles Street, Suite 1600
Rockville, Maryland 20850                    Baltimore, MD 21201
(301) 251-3752                               Tel: 443-392-9460
hhoffman@hoholaw.com                         Fax: 443-392-9499
jliew@hoholaw.com                            Jeffrey.Johnson@nelsonmullins.com
                                             Kraig.Long@nelsonmullins.com
                                             Samuel.Amon@nelsonmullins.com

/s/ *(signed with permission)*
Bradford W. Warbasse
Law Office of Bradford W. Warbasse
P.O. Box 1284
Brooklandville, Maryland 21022
(443) 862-0062
warbasselaw@gmail.com

*Counsel for Plaintiffs*

/s/      (*signed with permission*)
Jennifer R. Frankovich, Fed. Bar#26052
Baltimore County Office of Law
400 Washington Ave, 2nd Floor
Towson, MD 2104
Tel: 410-887-4420
Fax: 410-296-0931
JFrankovich@BaltimoreCountyMD.gov

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of December, 2025, a copy of the foregoing Joint Motion for Order Preliminarily Approving Settlement Agreement Establishing A Settlement Class Pursuant to Fed.R.Civ.23(e) and 29 U.S.C. Section 216(b), along with all Exhibits and other attachments, was filed via the Electronic Case Filing System (ECF) maintained by the U.S. District Court for the District of Maryland, and is available for viewing and downloading from the ECF system.

_____/s/_____
Jordan S. Liew