**IN THE U.S. DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| Michael A. Scott, et al. | * | |
| Plaintiffs | * | |
| v. | * | Case No. 1:21-CV-00034-SAG |
| Baltimore County, Maryland | * | |
| Defendant | * | |

**PLAINTIFFS' UNOPPOSED MOTION FOR ORDER FOR**
**FINAL APPROVAL OF THE SETTLEMENT AGREEMENT AND**
**FINAL CERTIFICATION OF**
**THE RULE 23 AND 29 U.S.C. § 216(b) SETTLEMENT CLASS**

Plaintiff Michael Scott, on behalf of himself and others similarly situated, and unopposed by Defendant, Baltimore County, Maryland, moves this Court for an Order approving a settlement reached in this Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) action and finally certifying a Fed. R. Civ. P. 23 Settlement Class under the Maryland Wage/Hour Law, Md. Ann. Code LE art. § 3-401 *et seq*.

## I.      INTRODUCTION

On behalf of the Plaintiff, undersigned Counsel is pleased to report that after completion of the Court-approved Notice program that was sent to 466 Class Members and after the passage of the March 15, 2026 deadline for filing claims, objections and submissions for requests to be excluded, not a single Class Member has requested exclusion from or objected to any aspect of the Settlement, Class Counsel's fees and cost payment, or the service fees tentatively proposed to be awarded to certain Class Members.

The total absence of any objections or requests for exclusion further supports Plaintiff's conclusion that the proposed Settlement represents an excellent outcome for the Class. As detailed

1

below, there a very positive reaction from the Class - a significant factor in evaluating a proposed settlement – and this is particularly meaningful here given that substantial time has passed since the Class Members performed work for the Defendant and are often itinerant or without fixed or stable home addresses.  While certain claims of Class Members will be excluded under the terms of the Settlement Agreement, those Class Members have been invited to appear before the Court at the Final Fairness Hearing, if they wish to be heard.  Plaintiff maintains that Ninety-Seven (97) of the 466 Class Members will recover very substantial monetary awards that they otherwise might not receive if this case was tried to verdict.  This high percentage of successful claims, together with no objections, provides the Court with additional powerful and affirmative evidence that Class Members view the proposed Settlement as fair, reasonable and adequate.

Accordingly, the Plaintiff respectfully requests that the Court grant final approval of the Settlement Agreement, and direct and supervise the Defendant's settlement payments to the Class and Class Counsel.

## II.    PROCEDURE FOR FINAL APPROVAL

This Court has set a Final Fairness Hearing, pursuant to Fed.R.Civ.P. 23(e)(2) for June 11, 2026, to determine whether to enter an Order providing final approval of the preliminarily approved settlement between the Parties.

Having preliminarily approved the terms of the settlement, which were reached in multiple rounds of negotiations involving the Hon. Erin Aslan, the Plaintiff proffers that the Court may limit the Final Fairness Hearing to the only issues remaining to be determined, i.e., whether "best notice that is practicable under the circumstances" has been provided by the Class Administrator, with focus on the participation rate (and other reaction) of the Class to determine whether the settlement warrants final approval.  See UAW v. Gen. Motors Corp., 235 F.R.D. 383, 385 (E.D.

Mich. 2006), aff'd sub nom. Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp., 497 F.3d 615 (6th Cir. 2007) ("In evaluating a proposed class settlement, the court "may limit the fairness hearing 'to whatever is necessary to aid it in reaching an informed, just and reasoned decision.' ").[1]

As the Fourth Circuit has long observed, a Trial Court should not "turn the settlement hearing 'into a trial or a rehearsal of the trial' nor need it 'reach any dispositive conclusions on the admittedly unsettled legal issues' in the case. It is not part of its duty in approving a settlement to establish that 'as a matter of legal certainty * * * the subject claim or counterclaim is or is not worthless or valuable.' It is not, though, to give to the settlement 'mere boilerplate approval phrased in appropriate language but unsupported by evaluation of the facts or analysis of the law.' While it should extend to any objector to the settlement 'leave to be heard, to examine witnesses and to submit evidence' on the fairness of the settlement, it is entirely in order for the trial court to limit its proceedings to whatever is necessary to aid it in reaching an informed, just and reasoned decision. So long as the record before it is adequate to reach 'an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated' and 'form an educated estimate of the complexity, expense and likely duration of such litigation, * * * and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise,' it is sufficient." Flinn v. FMC Corp., 528 F.2d 1169, 1172–73 (4th Cir. 1975) (footnotes and citations omitted, with alterations in original).[2]

---

[1]    All other issues, including fees and costs to be paid to Plaintiff's counsel, have been addressed in the Motion for Preliminary Approval.

[2]    While the Court has wide discretion in holding the Final Fairness Hearing, the Plaintiff anticipates that it will unfold in four stages: (1) Parties will briefly walk the Court through the terms of the settlement, submitting sufficient information for the Court to evaluate the merits of settlement and responding to any concerns by the Court; (2) hear from any Class Members, both for and against any settlement; (3) allow the Parties to respond to any objections; and (4) with the

### III.    FACTUAL BACKGROUND

Of course, the Plaintiffs assume the Court's familiarity with the facts and procedural history of this case, particularly as this Court has previously ruled on the Parties' summary judgment motion, *see* (ECF Doc.195), and approved the Joint Motion for Order Preliminarily Approving Settlement Agreement Establishing a Settlement Class Pursuant to Fed.R.Civ.P. 23(e) and 29 U.S.C. § 216(b), *see* (ECF Doc. 254).  Plaintiffs will therefore provide only a brief summary of the factual background of this case.

As the Court may recall, this case involves inmates who, while incarcerated at the Baltimore County Detention Center between January 5, 2018 and April 6, 2020, performed work at Baltimore County's Materials Recovery Factiliy ("MRF").    Michael Scott (the "Class Representative") filed a hybrid FLSA collective action and Rule 23 class action under Maryland Law, alleging a failure to pay minimum and overtime wages in violation of the FLSA, MWHL, and MWPCL.  (ECF Doc. 1).  An FLSA class was conditionally certified, and fifty-one (51) additional individuals opted into the lawsuit (the "Opt-in Plaintiffs").  (ECF Docs. 22-72).

After summary judgment was granted in favor of Defendant, (ECF Doc. 195 & 196), the U.S. Court of Appeals for the Fourth Circuit reversed and remanded with further instructions (ECF Doc. 200).  Defendant sought a Writ of Certiorari from the US Supreme Court, which was denied. Thereafter, the Parties reached a settlement on both Plaintiffs' claims and Plaintiffs' counsel's attorneys' fees and costs, following multiple days of Court-supervised settlement conferences before the Hon. Erin Aslan.  *See* (ECF Doc. 241).  After months of negotiations, and substantial assistance from Judge Aslan, the Parties signed a Settlement Agreement and submitted a Joint

---

Court rendering any ruling or Order.  4 Newberg and Rubenstein on Class Actions § 13:42 (6th ed.)

Motion for Order Preliminarily Approving Settlement Agreement Establishing a Settlement Class Pursuant to Fed.R.Civ.P. 23(e) and 29 U.S.C. § 216(b). (ECF Doc. 253 & 253-1). The Court approved the Joint Motion, and preliminarily certified a settlement class of the following individuals:

> [A]ny and all persons who were incarcerated at the Baltimore County Detention Center, located at 720 Bosley Avenue, Towson, Maryland 21204, and who performed work at the Materials Recovery Facility ("MRF") at Baltimore County's Central Acceptance Facility ("CAF") during their incarceration between January 5, 2018 and April 12, 2020, and who during this period were paid less than the then-applicable Maryland state minimum wage, including the Class Representative (Michael Scott) and all persons who have previously opted into this case pursuant to 29 U.S.C. § 216(b) (FLSA Opt-In Plaintiffs).

> (ECF Doc. 254, ¶4).[3]

## IV.    FINAL APPROVAL ANALYSIS

Plaintiff assume the Court's familiarity with the well-settled standards for approval of FLSA and Rule 23 Class settlements, which were discussed at length in the Preliminary Approval Motion. *See* (ECF Doc. 253, pg. 4-9). Moreover, none of the essential salutary facts laid out in detail in the Preliminary Approval Motion to support preliminary approval of both the FLSA and

---

[3]    On December 7, 2021, this Court certified a Rule 23(b)(3) class for claims brought under the MWHL and Maryland Wage Payment and Collection Law, Md. Ann. Code LE art. 3-501 *et seq*. (MWPCL). *See* (ECF Doc. 97). However, the Plaintiff abandoned his overtime claim under the MWHL and all claims (minimum wage and overtime) under the MWPCL. *See* (ECF Doc. 175, pg. 46 n.49). The Court, however, granted Summary Judgment as to all claims, without noting this concession. *See* (ECF Docs. 195, 196). Plaintiff did not appeal the MWHL overtime claim and the MWPCL claims he conceded, and presumably, when the case was remanded by the Fourth Circuit, those claims remained dismissed. Therefore, with the MWHL overtime and MWPCL claims dismissed, it has been Plaintiff's position that the definition of the class certified on December 7, 2021 is identical to the proposed settlement class definition submitted to the Court on December 19, 2025. (ECF Doc. 253). The only difference between the first certified class and the preliminarily approved settlement class, is the abandoned MWHL overtime and MWPCL claims. As noted *infra* at pages 11-12, Plaintiff abandoned those claims based on existing precedent in this District. Plaintiff maintains that the settlement papers filed for preliminary approval in this case were based upon the existing class that was certified on December 7, 2021. For analytical purposes, this is of no consequence as Rule 23(e) treats existing certified classes and proposed settlement classes in the same manner.

Rule 23 Class settlements, have changed since its filing. *See* (ECF Doc. 253, pg. 9-23). At this point, only the Rule 23(e) analysis turns on facts that developed after the filing of the Preliminary Approval Motion. Therefore, while Plaintiffs detail at length the settlement opt-in process and outcome below, Plaintiffs analysis for final approval of the FLSA claims and under Rule 23(a) and (b) will remain abbreviated for the sake of brevity.

> **A. The Settlement Opt-in Process And Outcome Support A Finding That The Settlement Agreement Is Fair, Reasonable And Adequate, And Therefore Meets the Requirements of Rule 23(e).**

> 1. Settlement Opt-in Process

The Court's preliminary approval order designated Rust Consulting as the Claims Administrator and approved of the Settlement Opt-In/Opt-Out/Objection Process, as detailed in the Settlement Agreement. (ECF Doc. 254, ¶10-11). The Parties, by all account, agree that Rust Consulting has adhered to the Settlement Agreement and Order of this Court, and executed its duties and responsibilities as Claims Administrator. A description of the tasks that were undertaken by Rust Consulting follows:

On January 14, 2026, Rust Consulting mailed the Court-approved Class Notice and Settlement Claim Forms to the last known address of the Settlement Class Members. (Exh. 1; Rust Consulting Decl., ¶ 12) (Exh. 1-A; Class Notice and Settlement Claim Forms). The Claims Administrator mailed the Court-approved Notices to 466 individuals based on addresses provided by the Defendant. (Exh. 1; Rust Consulting Decl., ¶ 10-11).

The Claims Administrator sent out text notices to 370 individuals where phone numbers were available. (Exh. 1; Rust Consulting Decl., ¶ 12).

Additionally, the Claims Administrator sent out two reminders by text messages, with the first reminder sent thirty (30) days after the initial mailing, and the second notice sent forty-five (45) days after the initial mailing. (Exh. 1; Rust Consulting Decl., ¶ 16).

For their part, Class Counsel notified the existing collective action opt-in class members and posted about the settlement claim process on their Facebook law firm page. (Exh. 2; Hoffman Decl., ¶ 8, 24).

2.   Notification to Class Members

The Settlement Agreement provided a sixty (60) day notice period for Class Members to file a claims notice, file an objection, or to file a notice opting out of the class.

Of the 466 Class Members, one hundred and seven notices (107) were returned as undeliverable, with no forwarding address.  Pursuant to the Settlement Agreement, Defendant provided any known social security numbers for the individuals where notices were undeliverable. The Claims Administrator was then able to perform skip traces on 100 of the 107 undeliverable, receiving hits on 75 of those skip traces and re-mailing notices and claim forms to those 75.  (Exh. 1; Rust Consulting Decl., ¶ 13).  Therefore, the Claims Administrator was knowingly unable to make contact with only 27 individuals, or 5.8% of the Settlement Class.

Of the 466 Class Members, one hundred and one (101) Settlement Claim Forms and Tax Documents (collectively, the "Settlement Claim Documents") were returned to Rust Consulting. (Exh. 1; Rust Consulting Decl., ¶ 17.i).  Of those one hundred and two (102), thirteen (13) originally had some sort of deficiency.  Of those thirteen (13) with some sort of deficiency, twelve (12) cures were submitted to the Claims Administrator; however, of those twelve (12) cured, only ten (10) were timely, with two (2) cures considered untimely under the terms of the Settlement Agreement.

Additionally, of those one hundred and one (101) Settlement Claim Documents received by the Claims Administrator, three of them were considered untimely under the terms of the Settlement Agreement.  (Exh. 1; Rust Consulting Decl., ¶ 17.ii).

In total, the Parties agree that under the terms of the preliminarily approved Settlement Agreement, ninety-seven (97) Settlement Claim Documents are considered timely received under the terms of the Settlement Agreement. (Exh. 1; Rust Consulting Decl., ¶ 17.iv). Included among these ninety-seven (97) are two (2) sets of Settlement Claim Documents that were submitted by the estates of deceased Settlement Class Members. (Exh. 2; Hoffman Decl., ¶ 15).

The five individuals who expressed interest in joining the settlement but are excluded under the terms of the Settlement Agreement are Opt-in Plaintiff Michael Wells, and Rule 23 Class Members Jason Lowrey, Jacob Stoner and Christopher Thompson. (Exh. 1; Rust Consulting Decl., ¶ 17.iii). Each of these individuals expressed interest in joining the settlement class, but under the terms of the Settlement Agreement, are not allowed to receive any funds. An explanation follows.

Michael Wells, an FLSA Opt-in Plaintiff submitted a complete and correct set of Settlement Claim Documents on March 16, 2026, and was late by one day. (Exh. 1; Rust Consulting Decl., ¶ 17.iii.4). Michael Wells expressed interest in this litigation early on by joining as an FLSA Opt-in Plaintiff, *see* (ECF Doc. 33), and was deposed by Defendant. (Exh. 2; Hoffman Decl. ¶ 20).

Jason Lowrey, a Rule 23 Class Member. submitted deficient Settlement Claim Documents that were postmarked for March 17, 2026, which made them two days late, and they were not received by the Claims Administrator until March 23, 2026, eight (8) days after the close of the primary opt-in window. (Exh. 1; Rust Consulting Decl., ¶ 17.iii.1). A cure notice was accidentally sent out to Mr. Lowrey on March 27, 2026, and he did attempt to cure his deficient Settlement Claim Documents, and had his original submission been timely, his cure would have been timely, having been returned on April 5, 2026. (Exh. 1; Rust Consulting Decl., ¶ 17.iii.1).

8

Jacob Stoner, a Rule 23 Class Member, timely submitted deficient Settlement Claim Documents (he was a missing date on his W-4). A deficiency cure notice was mailed to him on March 11, 2026. However, his cure was submitted on March 30, 2026, five (5) days after the close of his window to cure his deficiency. (Exh. 1; Rust Consulting Decl., ¶ 17.iii.2).

Christopher Thompson, a Rule 23 Class Member, did not submit his Settlement Claim Documents to the Claims Administrator until April 7, 2026, 2 days after his remailed notice deadline.[4] (Exh. 1; Rust Consulting Decl., ¶ 17.iii.3).

Tremaine Melton, a Rule 23 Class Member called undersigned counsel on May 14, 2026, looking to determine whether he could join the settlement. He was advised by undersigned counsel that the deadline was approximately two months prior, and that he could appear at the final fairness hearing if he wished to be heard. A copy of this Motion will be sent to Mr. Melton.[5]

Defendant has not consented to waive the timeliness requirements for the submission of Settlement Claim Documents or cures of any deficient Settlement Claim Documents, which Defendant maintains were reasonably negotiated by the parties and preliminarily approved by the Court. These individuals were informed by Class Counsel that they would not be receiving monies from the settlement but had the right to appear at the Final Fairness Hearing and ask the Court to be heard. They will also be served a copy of this Motion. Plaintiff, together with the Defendant, is nevertheless requesting the approval of this Motion and all terms of the settlement agreement

---

[4] Under the terms of the settlement agreement, initial notices that are returned as undeliverable may be remailed. If this occurs close to the close of the primary opt-in window, it may result in the deadline to return Settlement Claim documents being extended past the deadline for the primary opt-in window. In Mr. Thompson's case, his response deadline was April 5, 2026.

[5] As Mr. Melton contacted Class Counsel two months late, it was deemed unnecessary for him to submit any (untimely) Settlement Claim Documents to the Claims Administrator.

negotiated by the parties.   Counsel will respond at the hearing, if necessary, to any of these interested persons who appear and wish to be heard.

Class Counsel notes that when potential claimants contacted Class Counsel, seeking answers to questions,[6] and otherwise sought or welcomed assistance, their Settlement Claim Documents were complete and timely accepted.   (Exh. 2; Hoffman Decl., ¶ 23).   It therefore appears that a critical factor in whether an interested class member had any issues with joining this case, was (a) whether they received and reviewed their notice; and (b) whether they promptly reached out to Class Counsel and received assistance.   (Exh. 2; Hoffman Decl., ¶ 23).   Class Counsel Bradford Warbasse traveled twice to the Baltimore County Detention Center to communicate with potential class members still incarcerated.   (Exh. 2; Hoffman Decl., ¶ 15).

To summarize:

| | |
|---|---|
| **Settlement Class Members mailed:** | 466 |
| **Settlement Class Members texted:** | 370 |
| **Settlement Claim Documents received:** | 102 |
| **Deficient Settlement Claim Documents:** | 13 |
| **Deficient Settlement Claim Documents cured:** | 12 |
| **Timely Settlement Claim Documents:** | 97 |
| **Untimely/Uncured Settlement Claim Documents:** | 5 |

No Settlement Class Members filed an objection or an opt-out to the settlement.   (Exh. 1; Rust Consulting Decl., ¶18-19).

---

[6]     Some Class Members were suspicious, often calling to investigate whether this was some sort of scam.

In light of these numbers, Plaintiffs can report a successful participation (subscription) rate of approximately 21%.

### 3.  Prospective Settlement Payments

As the Court may recall from the Preliminary Approval Motion and Settlement Agreement, One Million Four Hundred Sixty-One Thousand One Hundred and Fourteen U.S. Dollars and Forty-Seven Cents ($1,461,114.46) was agreed to by Defendant to pay Settlement Opt-in Claimants, Service Fees, and the Claims Administrator.

For each successful Settlement Class Opt-In Claimant, base damages were calculated according to "Method 3" (and the corresponding Exhibit III) and "Method 5" (and corresponding Exhibit V) of Plaintiff's February 24, 2025 expert report, and as amended and supplemented by Plaintiff's March 24, 2025 rebuttal expert report.  However, the base damages for three Settlement Class Members, Naim Hodges ("Hodges"), David Folk ("Folk"), and Antonio Crawford ("Crawford"), were agreed between the Parties to be increased to include overtime compensation calculated in accordance with Plaintiff's Expert Method 3 (as opposed to Plaintiff's Expert Method 5).

The reason for this difference in treatment is due to the fact that Settlement Class Members Hodges, Folk, and Crawford contacted Class Counsel shortly after the close of the FLSA Conditional Certification Opt-in period in 2021, remained active and interested in the litigation over the years, provided assistance to Class Counsel during the litigation, and functionally participated as if they were FLSA Opt-in Plaintiffs.  Therefore, rather than Motion the Court to enlarge the FLSA Opt-in period, Class Counsel negotiated during settlement discussions to have Hodges, Folk, and Crawford receive their overtime damages like all the other FLSA Opt-in Plaintiffs.  Defendant agreed to this term, which was included in the signed Settlement Agreement. (ECF Doc. 253-1, ¶III.E.1).  In other words, Settlement Class Members Hodges, Folk, and

Crawford were paid consistent with the FLSA Opt-In Plaintiffs.  Under the law (or at least as agreed to by the Parties), only the FLSA Opt-In Plaintiffs enjoyed an overtime claim against Defendant.  Absent Rule 23 Class Members only had the right to receive minimum wages under the law.  Strange v. Prince George's Cnty., Maryland, No. CV TDC-19-2761, 2020 WL 4350373, at *3 (D. Md. July 29, 2020) (recognizing minimum wage MWHL claims may proceed against a county but dismissing overtime MWHL claim against County).

The Settlement Agreement also provided that where the total base damages for all Settlement Opt-In Claimants is less than the Settlement Fund, each Settlement Opt-in Claimant's recovery is increased by a prorated amount up to 2.0x their base damages.  (Exh. 3; Settlement Damage Calcs.).

The Parties agree that total base damages for all timely Settlement Opt-in Claimants is $370,539.44.   Therefore, the Settlement Class Opt-in Claimants' Base Damages should be increased up to 2.0x their Base Damages, for a total recovery of **$741,078.88**.  (Exh. 2; Settlement Damage Calcs.).

Additionally, Defendant agrees not to oppose Service Awards totaling Eighty-Five Thousand U.S. Dollars and zero Cents ($85,000.00) in the following amounts to the following individuals:

1. $2,500.00 for Aaron Kessler

2. $2,500.00 for Kenneth Nierwienski

3. $5,000.00 for Mark Mariner

4. $5,000.00 for Christopher Hackley

5. $15,000.00 for Harold Snyder

6. $15,000.00 for Adam Dulaj

7.  $40,000.00 for Michael Scott

As discussed at length in the Preliminary Approval Motion, these Service Award recipients contributed their time and opinion to multiple settlement conferences and furthermore provided substantial assistance in the development and prosecution of this lengthy case.  Michael Scott, in particular, went through great efforts to help initiate this litigation, participated at length in discovery, and contended with subpoenas to his then-current employer.  All Service Award recipients have signed a general release of all claims.  *See* (ECF Doc. 253, pg. 13-14).  Plaintiffs submit that the Service Awards are reasonable and fair and should be approved by the Court.

In total, the ninety-seven (97) Settlement Class Opt-in Claimants will receive **$826,078.88**. Under the terms of the Settlement Agreement, unclaimed funds will revert to Baltimore County.

### 4.  Release Under Settlement

Pursuant to the Settlement Agreement, Plaintiff Scott and the six other (6) Service Award Recipients agree to a broad, general release.  Settlement Opt-In Claimants agree to a release of all wage-related claims, including under the FLSA, MWHL and MWPCL claims through December 17, 2025.  Settlement Class Members who fail to become Settlement Opt-in Claimants and otherwise fail to opt-out agree to a release of all Maryland state law wage-related claims, including under the MWHL and MWPCL through December 17, 2025, but are not subject to a release of their FLSA claims.[7]  (ECF Doc. 253-1, ¶VIII.A-D).

### 5.  Class Counsel And The Settlement On Attorneys' Fees And Costs Should Be Approved.

Plaintiffs submit that the evidence in this case demonstrates that the work performed by Plaintiffs' counsel has exhibited a high level of dedication and conscientious effort, and they should therefore be approved as Class Counsel.

---

[7]      As a practical matter, all FLSA claims are barred by the statute of limitations.

As described at length in Preliminary Approval Motion, Class Counsel spent thousands of hours of work involving a contested class action with more than 20 depositions; review of more than 100,000 documents (and investigation and search for documents maintained by third parties); class certification; regular communications with class members (both individually and as a whole); extensive legal research and motions practice; an appeal with oral argument, followed by a published opinion by the U.S. Court of Appeals for the Fourth Circuit, an appearance and briefing at the U.S. Supreme Court; expert witness damage calculations; and time preparing and attending mediation; negotiating over, and drafting and revising voluminous and complex settlement documents (a process that took seven months, *see* (ECF Doc. 241 & 254)); overseeing the settlement opt-in process; overseeing the final calculation of settlement amounts; negotiating over, and drafting and revising the instant motion and related documents, the anticipated attendance of the Final Approval Hearing; and all final duties to both communicate with Settlement Class Members, insure that they paid, and otherwise wind down and dismiss this complex litigation. (Class Counsel submits herewith an updated Declaration regarding time and costs spent since the Preliminary Motion was filed. (Exh. 2; Hoffman Decl., ¶¶ 3, 33)).

Defendant agrees to pay Class Counsel Two Million Three Hundred Ten Thousand Nine Hundred U.S. Dollars and Zero Cents ($2,310,900.00), made payable to "Hoffman Employment Law, LLC" for reasonable attorneys' fees and costs incurred by Class Counsel. This amount was negotiated separately and secondarily, in a second full day of mediation before Judge Aslan.

Plaintiff submits that Class Counsel has more than adequately performed their duties as Class Counsel, and the Court should approve both their status as Class Counsel and the payment the Parties negotiated and agreed upon for Class Counsel's attorneys' fees and costs.

14

6.  The Settlement Agreement Is Fair, Reasonable and Adequate

Although not codified in the Federal Rules, courts have long considered the class's reaction to the proposed settlement to be the most significant factor in considering the fairness and adequacy of a class action settlement.

As an initial matter, Plaintiffs contend that the steps taken as described above by both the Claims Administrator and Class Counsel, provided the "best notice practicable" under the circumstances and more than adequately satisfies the requirements of Due Process and Rule 23. Proposed Settlement Class Members received mailed notices, two text messages where possible, skip tracing was performed, and where successful notices were re-sent and opt-in deadlines extended.  Class Counsel made additional efforts to reach out and inform Proposed Settlement Class Members of the existence of the Settlement.  Plaintiffs are content that all reasonable efforts were made to reach out to Proposed Settlement Class Members.

Here, again, there were no objections filed nor opt-out notices.  (Exh. 1; Rust Consulting Decl.; ¶18-19).

Likewise, that this Settlement saw a participation rate of approximately 21% supports a finding that this Settlement Opt-In process has generally been successful and the terms of settlement are fair.  Courts across the nation have examined and approved class action settlements with participation rates equivalent to, or even less, than what was achieved in this settlement. Wood v. Saroj & Manju Invest. Phil. LLC, 2021 WL 1945809, *7 (E.D. Pa. May 14, 2021) (agreeing that 110 out of 532 opt ins "is a very high participation rate for a wage and hour collective action"); Padron v. Golden State Phone & Wireless, 2018 WL 2234550, *5 (N.D. Cal. May 16, 2018 (approving claims made wage/hour class action settlement; observing that a 19.35% participation rate "exceeds other federally approved FLSA settlements."); Hernandez v. Immortal Rise, Inc., 306 F.R.D. 91, 100 (E.D.N.Y. 2015) (FLSA case, 20% participation "well above

15

average in class action settlements"); McClean v. Health Systems, Inc., 2015 WL 12426091, *4-5 n.6 (W.D. Miss. June 1, 2015) (approving wage/hour class action settlement; noting concern over 11% participation rate, but noting that while "relatively low, is squarely within the typical range for claims-made settlements" and further observing participation rate jumped to 22% when including existing FLSA opt-in Plaintiffs); Castillo v. Morales, Inc., 2015 WL 13021899, *7 (S.D. Ohio Dec. 22, 2015) (observing with respect to participation rates in FLSA cases, that it is "difficult to make an exact comparison between cases with widely disparate factual contexts" because low participation rates could be due to reasons relating to the nature of the workers being harder to locate; see also Lee v. Ocwen Loan Servicing, LLC, 2015 WL 5449813, *22 (S.D. Fla. Sept. 14, 2015) (observing, in a non-employment related class action, that "there is nothing inherently unfair about a single-digit claims rate in a class settlement" and reviewing single digit participation rates in approved cases).

Plaintiffs believe that this Settlement Opt-in has reached as many individuals as possible and given them reasonable time to respond, one way or another, to the settlement.  It is Class Counsel's opinion and judgment that this Settlement Opt-in Process has been fair, reasonable and adequate.  (Exh. 2; Hoffman Decl., ¶ 29).

More generally, as detailed at length in the Preliminary Approval Motion, the Settlement Agreement is fair, reasonable and adequate because it was the product of informed, non-collusive negotiations by experienced counsel, across multiple settlement conferences with the supervision of the Court, does not subject any Class Member to undue burden, and, in Plaintiff's opinion, provides a substantial recovery (i.e. double damages) to the Class.  Relief under the MWPCL is not available to these Plaintiffs, at least according to the only decision of this Court to address the issue.  Strange v. Prince George's Cnty., Maryland, No. CV TDC-19-2761, 2020 WL 4350373, at

16

*4 (D. Md. July 29, 2020) ("this Court finds that the County is not covered by the provisions of the MWHL and MWPCL relating to overtime requirements.").[8]

Given the posture and issues in this case, a judgment in favor of the Class was by no means guaranteed either.  Appeals by either Party could take more time and effort.

### B.  The Settlement Agreement Represents a Reasonable Compromise Over Issues in Actual Dispute And Should Approve The Settlement Of The FLSA Claims.

With respect to the approval of the release of the FLSA claims, Plaintiffs submit that the Settlement Agreement reflects a reasonable compromise over issues in actual dispute between the Parties.  Detailed at length in the Preliminary Approval Motion, the disputes between the Parties included the following: (1) employee status; (2) applicability of a wage credit; (3) the alleged working time of Plaintiffs; (4) the scope of Plaintiffs' damage; and (5) the applicability of liquidated damages.  *See* (ECF Doc. 253, pg. 9-10).

On the other hand, the FSLA Opt-in Plaintiffs who are Settlement Opt-in Claimants will be receiving not just 1.0x, but full, liquidated (2.0x) damages in accordance with Plaintiff's expert report, Method 3, and as amended and supplemented by his March 24, 2025 rebuttal report; in other words, Plaintiff maintains that FLSA Opt-in Plaintiffs will be receiving full and maximal relief under the FLSA.

There is also no evidence of fraud or collusion between the Parties, and moreover, the Settlement Agreement is the product of informed, non-collusive negotiations by experienced counsel, under the supervision and guidance of Magistrate Judge Aslan.  Accordingly, the

---

[8]   Undersigned counsel is requesting, in a separate proceeding before this Court, that this Court certify whether the MWPCL applies to local governments to the Maryland Supreme Court. *See* Benning v. LTYC Arts Core, Inc., U.S. D.Ct. MD Case No. 25-3373 ABA (ECF Doc. 34). But those aspirations, and how the Maryland Supreme Court might decide the issue, represent conjecture at this time that does not impact the settlement analysis in *this* case.

Settlement Agreement represents a reasonable compromise over issues in actual dispute. No Settlement Class Member has filed any objection to the settlement.

Finally, as discussed in greater detail below, *see supra*, the attorneys' fees and costs that Class Counsel will receive are reasonable.

Accordingly, the Court should find that the Settlement Agreement represents a reasonable and fair compromise and certify a collective settlement class under 29 U.S.C. § 216(b).

### C. The Settlement Agreement Meets All The Requirements of Rule 23(a) and Rule 23(b).

1. Rule 23(a)

With respect to the approval of the release of the Rule 23 MWHL and MWPCL claims, Plaintiffs submit that the Settlement Agreement meets the requirements of Rule 23(a).

Plaintiffs contend that the Proposed Settlement Class, which totaled 466 individuals, plainly meets the numerosity requirement.

The Proposed Settlement Class also meets the requirements for commonality as all Class Members shared common allegations regarding a failure to receive minimum wages while incarcerated at the Baltimore County Detention Center and working at Baltimore County's MRF.

Additionally, the Class Representative, Michael Scott, meets the typicality requirements as he was also a Baltimore County Detention Center inmate who worked at the MRF, and alleges that he did not receive minimum wages.

Likewise, the Class Representative has interest in common with, rather than antagonistic to, the interests of the Settlement Class. The docket of this case plainly demonstrates that both the Class Representative and Class Counsel vigorously prosecuted this case on behalf of the Class, and shared an interest with Settlement Class Members in pursuing their minimum wage claims. The adequacy requirement is therefore met.

2. Rule 23(b)

Plaintiffs similarly submit that the Settlement Agreement meets the requirements of Rule 23(b)(3).

Plaintiffs contend that because the claims of the claims of the Class Representative and the Settlement Class Members all arise from work they performed at the Baltimore County MRF while incarcerated at the Baltimore County Detention Center between January 5, 2018 and April 6, 2020, and all allege a failure to pay minimum wages by Defendant, the same question or fact and law predominate, and the predominance requirement is met.

Plaintiffs also contend that a Class Action is the superior method to adjudicating these actions given that the Proposed Settlement Class consisted of 466 individuals, and there were no less than 97 Settlement Opt-in Claimants. If all these individuals pressed their successive claims against the Defendant, it would be cost prohibitive, tax the resources of both Defendant and the Court, and moreover, risk inconsistent outcomes given the key legal question involved in this case of whether or not the Settlement Class Members are "employees" under the MWHL. Plaintiffs also note that no individuals have opted out of this litigation or filed objections.

**D.  The Claims Administrator Fee Should Be Approved.**

The terms of the Settlement Agreement require the payment of the Claims Administrator's fees from the Settlement Fund of $1,461,114.46. The Claims Administrator estimates the total cost of administration, including fees incurred and future costs to be $41,917.00. (Exh. 1; Rust Consulting Decl. ¶ 20).

As detailed above and demonstrated by the attached Declaration of the Claims Administrator, the Claims Administrator has performed their required function and dutifully sent multiple and varied notices, as well as received and processed numerous Settlement Claim Documents. *See generally* (Exh. 1; Rust Consulting Decl.).

Plaintiffs, with the consent of Defendant, request that the Court finally approve this payment as part of its final approval of this case as a settlement class action.

## V.    CONCLUSION

For all the foregoing reasons, Plaintiffs, with the consent of Defendant, respectfully request that the Court grant this Consent Motion, and finally approve this proposed FLSA settlement and certify this Settlement Class pursuant to Fed. R. Civ. P. 23 and 29 U.S.C. § 216(b).  Defendant consents to the relief requested and agrees that this settlement is fair, reasonable and adequate, without adopting each of Plaintiff's characterizations above.  For purposes of the FLSA, the proposed Settlement Agreement reflects a reasonable compromise over issues that are in dispute. For purposes of the MWHL class claims brought pursuant to Rule 23, the proposed Settlement Agreement is fair, reasonable and adequate, and there are no reasons to doubt its fairness, and it appears to fall within the range of possible approval.

Respectfully submitted,

/s/ *Howard B. Hoffman*
Howard B. Hoffman
Federal Bar No. 25965
Jordan Song En Liew
Federal Bar No. 20509
Hoffman Employment Law, LLC
2400 Research Blvd., Suite 380
Rockville, Maryland 20850
(301) 251-3752
hhoffman@hoholaw.com
jliew@hoholaw.com

20

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of May, 2026, a copy of the foregoing Plaintiffs' Unopposed Motion for Order For Final Approval of the Settlement Agreement and Final Certification of the Rule 23 And 29 U.S.C. § 216(b) Settlement Class, along with all Exhibits and other attachments, was filed via the Electronic Case Filing System (ECF) maintained by the U.S. District Court for the District of Maryland, and is available for viewing and downloading from the ECF system.

I hereby further certify that on this 21st day of May, 2026, a copy of the foregoing Plaintiffs' Unopposed Motion for Order For Final Approval of the Settlement Agreement and Final Certification of the Rule 23 And 29 U.S.C. § 216(b) Settlement Class, along with all Exhibits and other attachments, was served via U.S. First Class Mail, postage prepaid to the following individuals:

Michael Wells
5804 Radecke Avenue
Baltimore, Maryland 21206

Jason Lowery
424 South Maple Street
Graham, North Carolina, 27253

Jacob Stoner
189 Overview Circle West
Red Lion, Pennsylvania 17356

Christopher Thompson
514 Hurley Avenue
Baltimore, Maryland 21223

Tremaine Melton
1711 Waverly Way
Baltimore, Maryland 21239

/s/ *Jordan S. Liew*
Jordan S. Liew