**EXHIBIT 2**

**IN THE U.S. DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **Michael A. Scott, et al.** | * | |
| **Plaintiffs** | * | |
| **v.** | * | **Case No. 1:21-CV-00034-SAG** |
| **Baltimore County, Maryland** | * | |
| **Defendant** | * | |

/

## DECLARATION OF HOWARD B. HOFFMAN

1. I, Howard B. Hoffman, Esq., am at least 18 years of age and competent to testify, and I am not a party to, or related to a party, in this action. I am the principal attorney of Hoffman Employment Law, LLC. I serve as counsel to the Class in the above-referenced matter. I supervised all of the work in this case.

2. This Declaration is provided in support of the Motion for Order For Final Approval of The Settlement Agreement and Final Certification of The Rule 23 and 29 U.S.C. § 216(b) Settlement Class (the "Motion").

3. The purpose of this Declaration is to provide supplemental information to my earlier Declaration in support of the motion filed for preliminary approval. (ECF Doc. 253-4; Hoffman Declaration).

**Subsequent Facts Following Preliminary Approval**

4. Following this Court's preliminary approval, counsel for the class took a number of steps - consistent with the Settlement Agreement – to advance this matter forward.

5. Substantial effort was incurred in communicating with opposing counsel and the Claims Administrator, Rust Consulting. The parties were required to approve drafts of texts, a

website, and otherwise provide information on the "logistics" of the Notice.

6. After Notice was mailed, we remained in regular contact with the Claims Administrator concerning returned mailings.

7. Generally, we supervised the Claims Administrator and can report to the Court that we believe that Rust Consulting performed their duties correctly and in accordance with the Settlement Agreement and the Court's Preliminary Approval Order.

8. Once Rust Consulting began the 60-day notification period, Class Counsel exchanged communications (phone, email, text) with the Class Representative and existing FLSA opt-in class members. The purpose of these communications was to specifically inform/remind those individuals that they had an obligation to file claim forms.

9. While we were under no specific obligation to do so, in many instances we assisted the existing FLSA Opt-in Class Members with completing the claim form and tax documentation properly. Michael Scott and others required considerable assistance in this regard.

10. We generally utilized electronic signature recording software to perform this task. Links were sent to the personal emails of clientele. This electronic signature software records the IP address and other personal data to ensure that the forms were signed by those purporting to be the signer. The Settlement Agreement allowed for this procedure.

11. Once the signed documents were successfully signed and returned to us (and many had questions and/or technical issues, upon which we spent time to remedy), I personally would mail, email, or fax the claim forms and tax documents to Rust Consulting and check to ensure receipt by Rust Consulting of same.

12. Not only did we assist many of the FLSA Opt-in Plaintiffs, but we assisted many absent

Settlement Class Members whom we had never spoken or otherwise communicated with. On a regular near daily basis during the settlement "opt-in" period, I personally handled many calls from interested Settlement Class Members.  These calls were often received multiple times a day.  Many people who were unfamiliar with the case, but who had received notification from Rust, were both curious and suspicious of this case.  Those who were curious wondered "what the case was all about," "who brought it," "and how much can I possibly recover?"  We spent considerable time providing individuals with information regarding the case and their recovery potential.  Most of these individuals would also sign up electronically with us, realizing the ease with which we could assist them and accomplish their goals.  Some indicated that they would return the claim form by mail.  Some called *after* sending the claim forms to determine if their claim was received by Rust Consulting.

13. There were a handful of people that were suspicious.  They were suspicious of the request for their social security number.  We spent time providing interested Settlement Class Members with sufficient information to assuage any suspicion that this was a scam.  For example, we pointed them to new media coverage of the case to gain their trust.

14. Many recounted their experiences working for the Material Recovery Facility.  We spent time talking with them.

15. We spent time also receiving calls from family members of deceased Settlement Class Members.  We assisted two Estates complete claims for deceased Settlement Class Members.

16. We also worked with persons who were incarcerated.  Brad Warbasse traveled to the Baltimore County Detention Center to assist class members with completing their forms

and collecting same for filing with Rust Consulting.

17. Over 100 hours of attorney time was spent assisting interested Settlement Class Members, i.e., explaining the case, collecting documents and signatures, transmitting to Rust Consulting. Additionally, over 10 hours of time was spent reviewing and responding to communications from Rust Consulting, including their communications with Defense Counsel.

18. In many cases, Settlement Class Members provided overwhelming positive support towards the settlement. Many still felt wronged, taken advantage of, and unfairly treated years after performing this work for Baltimore County.

19. When provided some tentative settlement calculations (what they may receive), many people were overcome with gratitude. One individual recalled how he was going to finally pay off some tax debt that was preventing him from normalizing his financial life. Another individual indicated that it would allow him to put down a small downpayment on the first home he would be able to purchase. The Estates that filed claims would allow minor children to receive some monies to help with their care.

20. In the days leading up to the deadline, and over the weekend that the deadline fell on, I made it a point to check voicemail and email to make sure that any persons seeking to file a claim last minute could receive my assistance.

21. Unfortunately, one of the initial FLSA Opt-in Plaintiffs, Michael Wells, contacted us one day late. Michael Wells was deposed by the Defendant.

22. A number of other individuals had issues with properly completing the claim forms in a timely manner and/or returning corrected submissions in a timely manner. They are all identified in the Motion.

23. If an individual failed to comply with all of the deadline and other requirements contained in the Settlement Agreement, but otherwise showed some interest in at least *attempting to claim a recovery*, they have been told of their right to appear at the Final Fairness Hearing on June 11, 2026, and be heard by the Court, to the extent that the Court allows.

24. One observation is important here: when potential Settlement Class Members contacted the undersigned, seeking answers to questions, and otherwise sought or welcomed assistance, their settlement claim documents were complete and timely accepted *without exception*. It therefore appears that a critical factor in whether an interested class member had any issues with joining this case, was (a) whether they received or at least reviewed their notice; and (b) whether they promptly reached out to class counsel and received assistance.

25. In addition to reaching out to existing FLSA opt-in class members, I took other steps to potentially increase the number of persons potentially joining the case. For example, I shared the website that Rust Consulting prepared for Settlement Class Members to file claims on social media (i.e., Facebook). We spent $500.00 promoting that content.

26. We asked FLSA Opt-in Plaintiffs and Settlement Class Members who had been actively in contact with us to reach out to anyone that they may have stayed in touch with who might be eligible.

27. I also shared information of the settlement with major Baltimore County churches, on the assumption that Settlement Class Members or their families might hear of the availability of potential settlement funds.

28. We also shared information with media sources.

29. But I unaware of whether our *additional* efforts to "spread the word" lead to any single

person receiving notice of the case.  Individuals who called us appeared to generally have received notice by mail or text message.  I do not believe that there were any media stories relating to the availability of the settlement funds in this case.

30. It is my opinion that the settlement opt in process was fair, reasonable and adequate.  I do not think that more "opt-in" time would have led to a materially greater number of claims.

31. It is my opinion that the notice in this settlement process was the best practicable notice under the circumstances.  A substantial amount of time has passed since many of the workers were incarcerated and this group of workers tends to be more itinerant than average.  The vast majority of the workers did not stay in touch with other workers.[1] Between the time that has passed, the circumstances of the work and the tendencies of this particular worker population (including a more likely lack of social cohesion), I am nevertheless impressed that we have 97 recognized claims and it generally matches my expectations from the outset.

32. It is my opinion that the final payments to participating Settlement Class Members ("Settlement Opt-in Claimants"), which includes liquidated damages (double the amount due), is fair, reasonable and adequate.  These amounts represent the maximum amount that these workers could have received following a successful trial (which no doubt could have led to further appeals).

33. I am aware of no person objecting to the terms or procedure of the settlement, however, there are some persons disappointed by the rules established by the Settlement Agreement with respect to the claim process and presumably disagree with those rules as applied to their circumstances.  Again, those persons will receive a copy of the Final Fairness Motion,

---

[1]    Some seemed to use work as a means of avoiding communication with others.

this Declaration, and they have been apprised of their right to appear and be heard by the Court.

**Additional Time/Cost Spent**

34. Since my last Declaration, it is my opinion that we will spend over 200 hours advancing this matter to final settlement with anticipated disbursement of funds.

   a. As stated, we have spent over 110 hours working with Settlement Class Members and Rust Consulting, writing communications, providing consultations, updating class members, and otherwise monitoring and administering the progress of the settlement claim process;

   b. We have spent over 25 hours working with an expert witness and otherwise reviewing calculations for Settlement Opt-in Claimants with recognized claims;

   c. We have also spent over 25 hours preparing this Motion (including performing legal research and preparing the draft Order and this Declaration);

   d. We anticipate that we will spend at least 5 hours preparing for the Final Fairness Hearing; and

   e. We anticipate that we will spend at least 25 hours wrapping up the settlement, i.e., communicating with Settlement Opt-in Claimants (who regularly write for status updates, particularly inquiring about anticipated payment dates), and transmitting/meeting with them to distribute their settlement checks.

   f. We have spent $500.00 on promoted social media content regarding the availability of the settlement fund;

   g. We have spent $805.00 on our expert witness updating settlement claim numbers; and

h.  We anticipate spending at least $500.00 on US Priority Tracking postage to distribute settlement proceeds.

### Additional Information About Counsel

35. In my previous Declaration, I indicated that I may provide more information about Steven H. Goldblatt, Bradford W. Warbasse, and Stephen J. Springer.

a.  **Steven H. Goldblatt** served as our appellate counsel/advisor.  Until his recent retirement, Mr. Goldblatt served as a Professor at Georgetown Law Center in the Appellate Litigation Clinic.  He is a graduate of the Georgetown Law Center (1970).  Mr. Goldblatt was involved with clinical education at the Georgetown Law Center for approximately 40 years.  He has very substantial experience in appellate work before state and federal appellate courts, including six appearances as counsel of record before the United States Supreme Court (handling five oral arguments before the U.S. Supreme Court).  Over the years, his appellate work has involved civil rights, criminal law and procedure, and habeas corpus.  In his supervisory capacity of the Appellate Litigation Clinic, Mr. Goldblatt worked with undersigned counsel (Hoffman) on two successful appeals before the United States Court of Appeals for the Fourth Circuit, namely, Durham v. Jones, 737 F.3d 291 (4th Cir. 2013) (affirming judgment of judgment was obtained in the amount of $1,112,200.00 against Somerset County Sheriff; defeating claims of qualified immunity in First Amendment retaliation case) and Lane v. Anderson, 660 F. App'x 185, 196 (4th Cir. 2016) (reversing grant of 11th Amendment immunity for Baltimore City Sheriff).  In a review/revisory capacity, Mr. Goldblatt provided substantial assistance to undersigned counsel in the strategic presentation of issues

in the appeal of this case and the work performed before the United States Supreme Court.

b. **Bradford W. Warbasse.** Bradford W. Warbasse is a graduate of Boston University School of Law (May 1985) and has been a member of the Maryland bar since December 1985. After spending 18 years at a large Baltimore firm representing management in labor and employment matters, Mr. Warbasse has primarily focused on representing plaintiffs in employment litigation, including individual and collective actions under the FLSA. He has obtained many favorable decisions on behalf of FLSA plaintiffs in the District of Maryland, including <u>Rogers v. Savings First Mortgage, LLC</u>, 362 F. Supp. 2d 624 (D. Md. 2005) (Nickerson, J.) (summary judgment granted with respect to claims by 43  loan officers for unpaid minimum wages and/or overtime compensation under the FLSA, and unpaid bonuses under the Maryland Wage Payment and Collection Law); <u>Schultz v. All-Fund, Inc.</u>, 2007 WL 2333049 (D. Md. 2007) (Motz, J.) (summary judgment granted;  minimum wage and overtime claims); <u>Speert v. Proficio Mortgage Ventures, LLC</u>, 2010 WL 446047 (D. Md. 2010) (Bennett, J.) (denying an *Iqbal* motion to dismiss); <u>Speert v. Proficio Mortgage Ventures, LLC</u>, 2011 WL 2417133 (D. Md. 2011) (Bredar, J.) (partial summary judgment granted; minimum wage and overtime claims);  <u>Dorsey v. The Greene Turtle Franchising Corp.</u>, 2012 WL 3622909 (D. Md. 2012) (Blake, J.) (defense motion for summary judgment denied); and <u>Chapman v. Ourisman Chevrolet Co., Inc.</u>, 2011 WL 2651867 (D. Md. 2011) (Williams, J.) (representation of employee class in minimum wage dispute; summary judgment for employer denied). In this case, Mr. Warbasse provided

assistance to Hoffman Employment Law, LLC by handling some discrete discovery matters and serving as a "sound board" for strategic decisions (he served as an advisor to hear out ideas, opinions, or strategies and get constructive feedback before Hoffman Employment Law made a final decision).  In some instances, Mr. Warbasse addressed discrete matters relating to class members.

c.  **Stephen J. Springer.**   Stephen J. Springer is an attorney admitted in Commonwealth of Pennsylvania who appeared in this case *pro hac vice*.  Mr. Springer is a 1969 graduate of the University of Pennsylvania School of Law. Since graduating law school, Mr. Springer has focused his career primarily on employment law.  Mr. Springer spent many years performing work on behalf of unions and as a partner with a Pennsylvania law firm where he was involved in notable class actions.  Mr. Springer opened his own law practice in 2001, handling mostly employment law cases (which is how he met undersigned counsel (Hoffman); they had a 5 day jury trial in the U.S. District Court for the Eastern District of Pennsylvania each representing adverse parties against the other). Messrs. Hoffman, Warbasse and Springer worked together on the notable and oft-cited case <u>Dorsey v. The Greene Turtle Franchising Corp.</u>, 2012 WL 3622909 (D. Md. 2012).  In this case, Mr. Springer was instrumental in the preparation of the investigation and drafting of the initial Complaint in this case.  However, shortly after the case commenced, Mr. Springer stepped back by his own choice, and in the intervening years, he has fully retired from the practice of law.

**AFFIANT FURTHER SAYETH NAUGHT**

I solemnly affirm under the penalties of perjury that the contents of the foregoing declaration are true and correct.

Howard B. Hoffman, Esq.
May 21, 2026